JUNE 1820.

Shivers
vs.
Wilson.

## COURT OF APPEALS, JUNE TERM, 1820.

### SHIVERS vs. WILSON, Garnishee of WALKER, et al.

In a court of general jurisdiction, the personal disability of the plaintiff to sue, can only be taken advantage of by a plea in abatement.

Where a court has general jurisdiction, but its proceedings in relation to any particular subject are specially pointed out by statute, the mode so prescribed must be substantially pursued.

A court of limited jurisdiction must shew its jurisdiction on the face of its proceedings.

The act of 1795, ch. 56, regulating the manner of issuing attachments, is limited in its operation, and nothing done under it is valid, unless its provisions are substantially complied with.

No one can issue an attachment under that act but a citizen of this state, or of some other state of the United States.

One may be a citizen of the United States, and not a citizen of any one state of the United States, an allegation, therefore, that the party suing out an attachment is a citizen of the United States, is not sufficient; it must appear by the proceedings that he is a citizen of this state, or of some other state of the United States.

The proceedings under the act of 1795, ch. 56,

APPEAL from *Baltimore* county court. The plaintiff in the court below, (the present appellant,) in order to obtain an attachment under the act of 1795, *ch.* 56, exhibited to the clerk of that court the following affidavit, to wit: "State of *Maryland*, *Baltimore* county, sct. Be it remembered, that on the 27th day of April, in the year 1816, before me, the subscriber, a justice of the peace for *Baltimore* county aforesaid, personally appeared *Thomas Shivers*, *a citizen of the United States*, and made oath that *William Walker*, *James Collins* and *Jared Chesnut*, not being citizens of the State of *Maryland*, and not residing therein, are justly and *bona fide* indebted unto him, the said *Thomas Shivers*, in the sum of $3257, over and above all discounts. And at the same time the said *Thomas Shivers* produced to me the protested bill of exchange and award, on and by which the said *William Walker*, *James Collins* and *Jared Chesnut*, are so indebted, which are hereto annexed. And the said *Thomas Shivers* did also make oath that he is credibly informed, and verily believes, that the said *William Walker*, *James Collins* and *Jared Chesnut*, are not, nor is either of them, a citizen of the State of *Maryland*, and that they do not, nor does either of them, reside therein.

Sworn before,      *John F. Harris.*"

The bill of exchange, protest and award, referred to, were annexed to the affidavit. There was also a warrant from the said justice, directed to the clerk of the county court, requiring him to issue an attachment against the lands, &c. of the said *Walker* and others. Upon this warrant, &c. an attachment issued, directed to the sheriff

must not only shew that the party suing out the attachment is a citizen of this state, or of some other of the *United States*, but when the garnishee appears, and pleads *non assumpsit* by the defendant, the plaintiff must at the trial, prove himself to have been, at the time of the issuing out the attachment, a citizen of this state, or of some other of the *United States.*

of the county, reciting, that "whereas *John F. Harris*, Esquire, one of the justices of the peace for *Baltimore* county, hath this day issued his warrant to the clerk of said county, directing him to issue an attachment against the lands, tenements, goods, chattels and credits, of *William Walker*, *James Collins* and *Jared Chesnut*, to answer unto *Thomas Shivers* the sum of three thousand two hundred and fifty-seven dollars;" the sheriff was therefore commanded to attach the lands, &c. of the said *Walker* and others, &c. in the usual form of the mandatory part of such writs. A *capias ad respondendum* also issued, and a copy of the short note, which was filed, was sent with the writ. The sheriff's return on the writ of attachment was, that he had laid the same in the hands of *Nixon Wilson*. The *capias ad respondendum*, he returned *non sunt*, and that he had set up a copy of the short note. *Wilson*, the garnishee, appeared, and pleaded *non assumpsit* by *Walker* and others, and *nulla bona*. Issue was taken on the first plea, and a general replication and issue was joined on the other.

At the trial, the plaintiff produced evidence to prove, that a bill of exchange dated at *St. Jago de Cuba*, the 1st of August 1815, for $2912, at 60 days after sight, was drawn by *H. Geddes* and *T. F. Pimm*, in favour of the plaintiff, on *Walker* and others, and by them duly accepted. He further gave evidence, that payment of the bill was regularly demanded of the defendants, when it became due, and refused, and that the bill was then regularly protested for nonpayment. He further offered evidence to prove, that the garnishee in this case had funds belonging to *Walker* and others, in his hands, to the amount of $2600, at the time the attachment was laid. The defendant then moved the court to direct the jury, that the citizenship of the plaintiff was not sufficiently set forth in the attachment, within the meaning of the act of assembly of 1795, *ch.* 56, *s.* 1; and that the plaintiff was not entitled to recover without he gave evidence to the jury to satisfy them that he was a citizen of this state, or some other of the *United States*. The court below, [*Dorsey*, Ch. J. *Hanson* and *Ward*, A. J.] gave the direction as prayed. The plaintiff excepted; and the verdicts and judgment being against him, he prosecuted this appeal.

The cause was argued at the last term before BUCHANAN, EARLE and JOHNSON, J.

*Winder*, for the appellant, cited *Campbell vs. Morris*, 3 *Harr. & M'Hen.* 535. *Smith vs. Greenleaf*, 4 *Harr. & M'Hen.* 291; and *Smith et al. vs. Gilmor & Sons*, in this court, Dec. term 1812, and June term 1816.

*Pinkney* and *R. Johnson*, for the appellee, relied on *Hepburn & Dundas vs. Ellzey*, 2 *Cranch*, 445. *The Corporation of New Orleans vs. Winter*, et al. 1 *Wheat.* 91. *Campbell vs. Morris*, 3 *Harr. & M'Hen.* 553. 3 *Blk. Com.* 302. *The King vs. Johnson*, 6 *East*, 586, 594. 5 *Bac. Ab.* tit. *Pleas & Pleadings*, (E.) 661. *Mostyn vs. Fabrigas, Cowp.* 166, 172. 1 *Chitty's Plead.* 426, (note b.) *Bingham vs. Cabot*, 3 *Dall.* 383. *Abercrombie vs. Dupuis*, 1 *Cranch*, 343. *Wood vs. Wagnon*, 1 *Cranch*, 9. *Capron vs. Van Noorden*, Ibid 126. *Kemp's lessee vs. Kennedy*, et al. 5 *Cranch*, 173; and *Rex vs. Jarvis*, 1 *Burr.* 148.

*Curia adv. vult.*

JOHNSON, J. at this term, delivered the opinion of the court. In this case it has been determined by *Baltimore* county court, that on the plea of *non assumpsit* by a garnishee, it was incumbent on the plaintiff, before he could recover, to produce evidence to the jury, that he was a *citizen of this state*, or of some *other* of the *United States*. No such proof was exhibited, and the garnishee sustained his defence.

On the part of the appellant it is contended, that, as the court before whom the cause was depending had a *general*, and not a *limited* jurisdiction, over the *matter* in contest, no advantage could be taken of the plaintiff's incapacity to sue, except by a plea in *abatement*.

No position in law is more clearly established, than that a defendant in a cause, before a court of *general* jurisdiction, must, if he wishes to avail himself of the disability of the plaintiff to sue, do so by a plea in *abatement;* and no principle of law is more evident, than that where the tribunal is of a *limited* jurisdiction, or the *proceedings* are *particularly described by a statute* made on the subject, that course of procedure, so described, must, on the face of the record, appear to have been, if not literally, at least *substantially* complied with, or the case must by the proceedings disclose itself to be within the limited jurisdic-

tion. It follows, from the preceding principles, that the decision of the court below must be sustained, if it had but a limited jurisdiction, or if its course of proceeding was of a circumscribed description, unless, on the face of the record, the case shall appear to have been within the jurisdiction, or the course of proceeding directed by law, to have been substantially complied with.

On these principles rest the numerous decisions on the acts for marking and bounding lands, made by the late general court, and all the courts of the state of original jurisdiction, and which have been universally acquiesced in. In these cases, notwithstanding the statutes explicitly declare that unless the adjudication under them is called in question within a *prescribed period*, it shall be *final* and *conclusive;* yet, in every instance, where attempts have been made to use those proceedings on the trial in ejectments, where the land comprehended in the commissions has been the subject in contest, they have been rejected, (although no exception had been taken to them within the limited time,) unless the whole proceedings appeared to have pursued the course prescribed by such statutes. The power of the county courts, under these acts, was universal; they, and they alone, were authorised to issue those commissions; they, and they only, had the authority to direct the adjudication of the commissioners to be recorded; and when recorded, the act of assembly itself, after the expiration of the time mentioned, declared them final; yet invariably have the courts determined them not to be final, but, on the contrary, of no effect whatever, unless they were on their face entirely regular. These decisions rest on the principle, that where the course of procedure is described by the statute, the proceedings themselves must show their conformity with the act by which they are authorised, and that otherwise advantage of non-conformity can, at any time, be taken.

The act of 1795, *ch.* 56, under which the proceedings in this case are supposed to be protected, gives, it is true, full and entire jurisdiction in all cases of attachments coming within the purview of the act, yet that entire jurisdiction is confined to such cases as the act embraces. If the act comprehends the case at bar, then no exception to the disability of the plaintiff was available, except by plea in *abatement;* if, on the contrary, that act extends

not to the case, the plaintiff had no right to recover, and
the decision against him was correct. The act of assem-
bly needs only to be read to discover its *limited* operation.
It gives not the right *to every person* to issue, or cause at-
tachments to issue; its provisions confine the remedy to
*citizens of this state*, or to some *other of the United States*,
and the manner in which they are to proceed is, in detail,
pointed out. The plaintiff, to succeed under that law,
must come within its provisions; the plaintiff, to recover
under that act, must follow its directions. The record be-
fore the court, in this case, in no part of it brings the
plaintiff within that description of persons who had a right
to issue, or cause the attachment to have been issued.
The right to condemn the property in favour of such a
plaintiff, is by no law vested in the court before whom the
cause was tried, or in any other court.

If the question was now to be taken up, uninfluenced
by any adjudication, it must be a forced construction that
could bring a person, as described by these proceedings,
within its pale; that could extend relief to him, who at the
trial of the cause refused, or failed to prove himself with-
in the description of the law. But the matter is not for
the first time before the court. The effect of such lan-
guage, as the act contains, has been ascertained by the de-
cisions on the constitution of the *United States*. And al-
though this court are not bound by those decisions, yet,
having been pronounced by one of the most enlightened tri-
bunals in *America*, it would be unbecoming in this court
to declare them to have been erroneous; and if not erro-
neous (as we are of opinion they are not) it follows that
the opinion of the court below, made in conformity with
the principle established by those decisions, was correct,
and the judgment given ought to be affirmed.

<div align="right">

JUDGMENT AFFIRMED.