## JOHN WANAMAKER *vs.* JOHN BOWES.

*Attachment bond—Act of* 1864, *ch.* 306—*Impeach-*
    *ment of Mortgage — Evidence in mitigation of*
    *Damages in an Action for the Illegal Seizure of*
    *Mortgaged goods—Exemplary Damages—Measure*
    · *of Damages.*

The bond required by the Act of 1864, ch. 306, as preliminary to issuing
    an attachment, if not executed in conformity with the statute, is in-
    valid, and the attachment is illegal· and void.

A creditor of a mortgagor not having acquired a lien upon the mortgaged
    ' goods, by attachment or other valid legal process, will not, in an action
    against him by the mortgagee for wrongfully and illegally seizing the
    mortgaged property, be permitted, merely because he is a creditor of
    the mortgagor, to impeach the mortgage as fraudulent as against cred-
    itors, either as a defence to the action, or in mitigation of damages.

In an action by a mortgagee against a creditor of the mortgagor for a
    · wrongful and illegal seizure of the mortgaged goods—they having been
    taken under a void attachment—the defendant may prove in mitigation
    of damages, that at the time of the seizure under the attachment, there
    was rent in arrear due upon the premises occupied by the mortgagor,
    in which the goods were; that after the seizure by the sheriff, and
    before the removal of the goods, there were filed with him by the land-
    lord a notice and affidavit of such rent in arrear, and that in pursuance
    of such notice, and of an order of Court passed in the attachment case,
    ·the sheriff paid to the landlord, out of the proceeds of the sales of the
    property, the amount of the rent in arrear.

In an action for an illegal seizure of goods, where there is no evidence of
    wanton or malicious wrong on the part of the defendant, exemplary
    damages should not be allowed.

The measure of damages, for an illegal seizure of goods, is to be deter-
    mined in accordance with the facts of the particular case..

APPEAL from the Circuit Court for Howard County.

On the 24th of June, 1869, Judson H. Smith executed a
bill of sale, by way of mortgage to the appellee, of· certain
goods, furniture and household stuff. By a provision in the

mortgage, the mortgagor was entitled to retain possession of the property until default, which could not occur until the 24th of June, 1870, the date fixed for the payment of the first instalment of the mortgage debt. On the 19th of October, 1869, the appellant sued out of the Superior Court of Baltimore city an attachment on original process, under the Act of 1864, ch. 306, against Smith, to recover from him the sum of $5,871.30; this attachment was laid on the goods embraced in the mortgage, and the same were seized and sold by the sheriff. On the 21st of February, 1870, this suit was instituted by the appellee in the Baltimore City Court against the appellant to recover damages for the alledged wrongful seizure of said goods.

The declaration contained three counts: The first, a special count in case, for the seizure, and the refusal to restore the goods upon request, "in consequence of which the plaintiff was deprived of the advantage, pecuniarily, of having said goods disposed of at retail; by means whereof he could have realized much greater sums of money for the same than the proceeds resulting from auction sales or sales *en masse.*" The second, a count in *trespass de bonis asportatis.* And the third, a count in *trover.*

At September Term, 1871, the cause was tried, but the jury were unable to agree, and it was afterwards removed at the instance of the appellee to the Circuit Court for Howard county, where it was tried in April, 1871, resulting in a verdict and judgment in favor of the plaintiff for $1,000.

Three exceptions were taken by the defendant to the rulings of the Court below.

*First Exception:* The plaintiff offered in evidence the mortgage to himself from Smith, and also the attachment proceeding, stating at the time of so offering it, that he did so for the purpose of showing that it was void, because the bond which had been given under the Act of 1864, ch. 306, was void. The bond is as follows:

Know all men by these presents, that we, William H. Wanamaker, on behalf of John Wanamaker and Wm. H. Wanamaker, and Robert Cathcart, sureties, all of Baltimore city, in the State of Maryland, are held and firmly bound unto the State of Maryland in the full and just sum of twelve thousand dollars, current money, to be paid to the said State, its certain attorney or assigns; to the payment whereof, well and truly to be made and done, we bind ourselves, our heirs, executors and administrators, firmly by these presents. Whereas, the above bounden W. H. Wanamaker has, on the day of the date hereof, ordered an attachment out of the Superior Court of Baltimore city, at the suit of John Wanamaker, against Judson H. Smith, for the sum of fifty-eight hundred and seventy-one dollars and thirty-cents, and the same being about to be sued out of said Court, returnable on the second Monday of January next.

Now the condition of the above obligation is such, that if the said John Wanamaker shall prosecute his suit with effect, or in case of failure thereof, shall well and truly pay and satisfy to the said Judson H. Smith, or to any person interested in these proceedings, all such costs in said suit, and such damages as shall be awarded against the said John Wanamaker, his heirs, executors or administrators, in any suit or suits which may hereafter be brought for wrongfully suing out said attachment, then the above obligation to be void, otherwise to remain in full force and effect.

In witness whereof, we have hereunto set our hands and seals, this 19th day of October, 1869.

> JOHN W. WANAMAKER, [Seal.]
> (W. H. WANAMAKER,)
> WM. H. WANAMAKER, [Seal.]
> ROBERT CATHCART, [Seal.]

Signed, sealed and delivered in presence of
JOHN W. PEALE.

The sureties verified as to their sufficiency before the clerk of the Court.

The defendant then proposed to prove that the mortgage was fraudulent as against creditors. To this evidence the plaintiff, while admitting that the defendant was a creditor of the mortgagor, at and before the execution of the mortgage, objected, and the Court (HAMMOND, J.) sustained the objection, being of opinion that the attachment bond was void and the whole proceeding illegal, and that the defendant had no right to show that the mortgage under which the plaintiff claimed title to the goods alleged to have been seized, was fradulent as against creditors and void. The defendant excepted.

*Second Exception:* This exception is fully stated in the opinion of the Court.

*Third Exception*: The plaintiff offered a duly certified copy of the bill of sale from Judson H. Smith to John Bowes, and gave evidence tending to prove the validity of the respective items of consideration recited in said bill of sale, and that written notice of it was given to the sheriff and to the agent and brother of the defendant before the issuing of said writ of attachment, and that the goods upon consignment from the defendant, at the stores Nos. 38 and 40 W. Baltimore street, were easily discriminated from the residue of the stock of goods then at said store; that prior to and at the time of the said seizure, J. H. Smith was heard to tell Wm. Wanamaker, the agent and brother of the defendant, at the store, that he could readily pick out his brother's (the defendant's) goods that had not been sold; that said consigned goods and all others had marks upon them, and could readily be recognized and distinguished from the defendant's and all other goods upon the premises which were seized; that the goods seized and sold by the sheriff under the attachment, other than those consigned by the defendant and those subsequently purchased by Smith, were covered by the bill of sale aforesaid and upon the premises at the time of its execution; that the entire stock,

at the seizure, was worth from $12,000 to $15,000, including the defendant's goods and those covered by the bill of sale, and those subsequently purchased; that the defendant's consigned goods were of the value of about $1,500; that the goods sold by the sheriff did not bring one-fourth of their value. The plaintiff further proved that the sheriff took possession of all the goods in the store by order of the defendant's agent, Wm. Wanamaker, though he knew there was a bill of sale, and so notified the said William, who gave him a bond of indemnity before he would consent to seize and remove the goods from the stores Nos. 38 and 40 W. Baltimore street. A witness of the defendant, one Wm. Wanamaker, also testified that he knew his goods by the marks upon them; that he held a conversation with Judson H. Smith, who informed him that the bill of sale was all bosh, and only given to keep off the creditors; on his cross-examination there was evidence elicited tending to show that this conversation took place after the issuing and levy of the attachment.

To maintain the issue on his part, the defendant offered evidence tending to prove that, on the 24th of June, 1869, he was a large creditor of Judson H. Smith's for a debt contracted in 1868, and in the spring of 1869, and that the said debt remained unsatisfied down to the time of the issuing of the attachment offered in evidence; that when the attachment was issued, the plaintiff was aware of its being issued; and that when the sheriff, under it, proceeded to seize the goods mentioned in the evidence, the plaintiff did not point out to the officers making the seizure the goods claimed by him under the mortgage to him from Smith, dated June 24th, 1869, although he was at Smith's store during the transaction; that when the mortgage was executed, no change was made by Smith in the management of his business; that he contined to buy goods suitable for his business, of the same character and description as those mentioned in the mortgage, down to the time of the seizure under the attachment—such

purchases amounting to from four to six thousand dollars—
and continued to make sales ranging from about two thou-
sand to three thousand dollars per month, exclusive of the
month of August, when they were lighter; that the goods
mentioned in the mortgage were kept in a separate place
or room from the stock of goods previously consigned to
Smith by the defendant, or subsequently purchased by
Smith, but that the goods consigned by the defendant
were easily discriminable, by reason of the marks and tickets
upon them; that before the attachment, Smith promised to
surrender to the defendant his consigned goods, but failed
to do so; that Smith, in the spring of 1868, failed, being
largely indebted to various persons, including the plaintiff
and defendant; that a compromise was effected with most
of his creditors at thirty-three per cent., the plaintiff and
defendant included; that Smith gave his promissory notes to
such as agreed to take the thirty-three per cent., at six, twelve
and eighteen months; that the first of said notes were paid,
the others remaining unpaid; that the plaintiff also took said
notes; that none of them were paid in consequence of Smith's
alleging to the plaintiff his inability to meet them; that the
plaintiff, without either communicating or concealing the fact
from the creditors who made such settlement, gave Smith
back these notes, and the whole original debt formed a portion
of the consideration of the bill of sale, which was given the
24th of June, 1869.

The defendant further proved, that no part of the proceeds
of the goods seized and sold under the attachment was paid
over to him, but that· the whole net proceeds were paid to
Emill Sutro, the assigneee in bankruptcy of said Smith.

The plaintiff offered the following prayers:

1. That if the jury find that the attachment was in fact
issued under and on account of the impression that the bill
of sale did include all the goods on the premises at the time
of the execution of such bill of sale, and that the attachment
was not at all issued and levied on account of the conversation

of William Wanamaker with the grantor, Smith, then such conversation is not admissible to affect the damages.

2. That if the bill of sale given in evidence be unimpeachable as to its validity, by the defendant in this action, the plaintiff is entitled to recover under the first count the value of the goods covered by the mortgage bill of sale which were taken by the defendant, having the means of knowing his own goods from the other goods of the plaintiff covered by the mortgage bill of sale, with such interest on their value as the jury may see fit to allow, and that the jury are also entitled to give punitive damages, if having the opportunity and means of knowing the goods of his own, as discriminated from those of the plaintiff, and with knowledge of the plaintiff's mortgage bill of sale, he proceeded to issue the attachment given in evidence, and to seize and sell the goods which were taken under said attachment; provided the jury find no other circumstances in the case to decide them not to give punitive damages.

And the defendant asked the following instructions :

1. That by the terms of the mortgage from Judson H. Smith to the plaintiff, Smith was entitled to the possession of the goods therein mentioned, until default in the payment of the promissory notes therein recited at the maturity thereof respectively. And that, therefore, the plaintiff cannot recover upon the second and third counts in his declaration, because at the time of the alleged trespass and conversion by the defendant in said counts set forth, none of the said promissory notes had matured, and the said Smith being accordingly in no default in the payment thereof, the plaintiff was not entitled to the possession of the said goods, and not being entitled to such possession, cannot maintain trespass for the seizure and asportation, or *trover* for the converson of such goods.

2. If the jury find from the evidence that the mortgage from Judson H. Smith to the plaintiff, dated June 24th, 1869, was made for the purpose of delaying, hindering or

defrauding the creditors of said Smith, it is void and the plaintiff cannot recover.

3. If the jury believe that the goods mentioned in the mortgage of June 24th, 1869, from Smith to the plaintiff, were by the permissive act of the plaintiff so intermixed with. other goods on the premises of said Smith, not included in said mortgage, as to prevent separation, then the plaintiff cannot recover.

4. If the jury find from the evidence that at the time of the seizure under the attachment, there were upon the premises goods belonging to the defendant, and consigned by him to Smith for sale on commission, and also other goods purchased by Smith subsequent to the date of said mortgage from Smith to the plaintiff, and that by the permissive act of the plaintiff, the goods mentioned in said mortgage were allowed to be so intermingled by said Smith with such consigned, and subsequently purchased goods as to prevent separation, or that at the time of said seizure the plaintiff did not point out to the sheriff the goods by him under said mortgage; but that, on the contrary, the plaintiff claimed all the goods so seized by the sheriff, then the plaintiff is not entitled to recover.

5. That to entitle the plaintiff to recover, he must prove: 1st. That the goods seized were on the premises of said Smith at the time of the execution of the mortgage. 2d. That they were known to the defendant to have been on the premises at the date of the said mortgage, or that they were as such pointed out by the plaintiff to the officers making such seizure.

6. That there is no evidence that the plaintiff pointed out to the officers making the seizure the goods claimed by him under the mortgage from Smith.

7. If the jury believe from the evidence that in the spring of 1868, Judson H. Smith being unable to pay his creditors in full, made a settlement with them by passing to them his unsecured promissory notes, payable at dates ranging from six months to twenty-four months, for thirty-three per cent.

or thereabouts, of his indebtedness to them respectively, and that his creditors, including the plaintiff, by virtue of an agreement or understanding with said Smith and with each other, accepted said thirty-three per cent. so payable, in full satisfaction of their respective claims, and that subsequently the plaintiff, without the knowledge or consent of his fellow-creditors of said Smith, surrendered to said Smith, the promissory notes given to him in satisfaction of his claim against Smith, and obtained from said Smith the mortgage of June 24th, 1869, as a security for his whole claim, as recited therein, against said Smith, then said mortgage is fraudulent and void, and the plaintiff is not entitled to recover in this suit.

8. That if the jury find for the plaintiff, their verdict must be limited to the value of such of the goods specifically enumerated in the mortgage from Smith to the plaintiff, dated June 24th, 1869, as they may find from the evidence were upon the premises at the time of the seizure under the attachment offered in evidence, including all goods consigned to said Smith by the defendant, with such interest and such value as the jury may allow.

The Court granted the prayers of the plaintiff, and rejected those of the defendant, except the first, which was conceded. To this ruling of the Court, the defendant excepted and the verdict and judgment being against him he appealed.

The cause was argued before BARTOL, C. J., GRASON, ALVEY and ROBINSON, J.

John J. Donaldson and John P. Poe, for the appellant.

The ruling to which the first exception was taken, was erroneous; the attachment bond was not void. Stewart vs. Katz, 30 Md., 344, 345.

But, assuming that the bond was void, the defendant being admitted to be a creditor of Smith's, and having seized the goods under color of lawful process, had a right to defend

himself in a suit for damages by proof of the fraudulent and void character of the plaintiff's claim.

At the time of the seizure complained of, the appellee's mortgage was not due, and until default the mortgagee had no right to possession. He could not, therefore, (as is conceded,) maintain either trespass or trover.

The second and third counts being accordingly abandoned, the plaintiff's case rested entirely upon his first count. The injury complained of in that count was to his reversionary interest as mortgagee, in goods lawfully in the possession of the mortgagor before default.

It was the injury to his title therefore, and not to his possession that was in issue, and for which damages were sought to be recovered.

He claimed under the mortgage and not otherwise; if that was void he had no title at all, and if he had no title it is somewhat difficult to perceive what cause of action he had, and how he could have been injured by the seizure of the goods which he did not own. At all events, in determining the damages, the character of his title, whether *bona fide* or fraudulent, was a material subject of inquiry to be passed on by the jury.

The evidence to the rejection of which the second exception was taken should have been admitted in mitigation of damages. The rent due being a lien upon the fund in the hands of the sheriff was properly deductable therefrom, and the extent of the plaintiff's right to recover was manifestly materially affected by this fact.

The plaintiff's first prayer was improperly granted. The second prayer was also erroneous.

*First.* Because it denied the right of the defendant to impeach the mortgage for fraud.

*Second.* Because it allowed the jury to give punitive damages.

The first count of the declaration, upon which alone the plaintiff's case rested, merely sought to recover such damages

as he sustained "pecuniarily, by not being allowed to have the goods disposed of at retail." Under this count punitive damages being expressly excluded could not be recovered.

The defendant's eighth prayer presented the proper measure of damages and should have been granted.

The defendant's third, fourth, fifth and sixth prayers are directly sanctioned by the case of *Hamilton vs. Rogers,* 8 *Md.,* 301, and should have been granted. See also *Chappell vs. Cox,* 18 *Md.,* 519.

*John Henry Keene,* Jr. and *Wm. Henry Norris,* for the appellee.

It was undoubtedly competent for the appellee, as mortgagee under a valid mortgage, to maintain an action on the case against any one seizing or injuring the goods covered by the mortgage. *Forbes vs. Parker,* 16 *Pick.,* 462.

"A voluntary or fraudulent conveyance is perfectly good between the parties and their representatives, and against all persons except creditors." 1 *Amer. Lead. Case, Sexton vs. Wheaton,* and *Salmon vs. Bennett,* 45.

The creditors have to be such as have a lien by judgment or valid judicial process. *Hastings vs. Belknap,* 1 *Denio,* 191–198; *Birely & Holtz vs. Staley,* 5 *G. & J.,* 452; *Jones vs. Bryant,* 13 *New Hamp.,* 53; *Neustadt vs. Joel,* 2 *Duer,* 532; *Ogden vs. Prentice,* 33 *Barb.,* 162.

It is admitted, that a lien by a valid attachment would authorize the sheriff or the execution creditor to show a deed to be fraudulent as between the plaintiff and the execution debtor. *Pease vs. Anderson,* 44 *Ill.,* 218; *Bascom vs. Smith,* 21 *New York,* 595.

Was the attachment then in this case valid, and was it competent for the plaintiff to show its invalidity? That he was entitled to show its invalidity arises from the principle, that want of jurisdiction is never a collateral question. *Trieber vs. Blocher,* 10 *Md.,* 14; *Hall & Loney vs. Richardson,* 16 *Md.,* 396.

Was the attachment void? The attachment process is *strictissimi juris,* and every thing requisite to give jurisdiction must affirmatively appear on the face of the proceedings. *Evesson vs. Selby,* 32 *Md.,* 345; *Boarman vs. Israel,* 1 *Gill,* 373; *Risewick vs. Davis,* 19 *Md.,* 82.

In this attachment case, the attachment was void by two defects connected with the execution of the bond, either of which was fatal.

1st. The bond was not executed by the obligor proposed in the body of the bond, Wm. H. Wanamaker, but by John W. Wanamaker, the plaintiff in the attachment suit, by Wm. H. Wanamaker, who had no sealed power of attorney, authorizing the signing of the name of the plaintiff in the attachment suit. *Stewart vs. Katz,* 30 *Md.,* 344.

A man cannot be both surety and obligor in the same bond. *Elwell vs. Shaw,* 1 *Am. Lead. Cases.,* 599, 602, 603; *Lessee of Clark vs. Courtney,* 5 *Peters,* 350; *Bellas vs. Hays,* 5 *Sergt. & Rawle,* 438; *Stinchcomb vs. Marsh,* 15 *Gratt.,* 211; *Key's Ex'rs vs. Parnham,* 6 *H. & J.,* 418.

2d. The bond was never approved. The oath of two sureties as to their sufficiency, is not the approval required by the Act of 1864.

As the Act of 1864, ch. 306, section 4, required the bond to be approved, "*which* bond shall be filed in the office of the clerk issuing such attachment," it would seem that a substantial compliance with the law required this jurisdictional fact to appear on the bond as the cause of action to any one damnified.

There is no evidence set out in the second bill of exception to entitle the Court to consider it, as it does not incorporate the evidence in the first bill of exception.

But without reference to this objection the ruling was correct—assuming the attachment to have been valid. *Thomson vs. Balt. and Susq. Steam Co.,* 33 *Md.,* 312.

But the attachment being void, the appellant was a wrongdoer and entitled to set off no claims of other people paid by

him. *Addison on Torts*, 543, 664 ; *Attack vs. Bramwell*, 113 *E. C. L. R.*, 520 ; *Sowell vs. Champion*, 6 *Ad. & Ell.*, 407 ; *White vs. Binstead*, 76 *E. C. L. R.*, 307 ; *Barker vs. Braham*, 3 *Wils.*, 376 ; *White vs. Morris*, 73 *E. C. L. R.*, 1015 ; *Wormer vs. Biggs*, 61 *E. C. L. R.*, 36 ; *Perrott vs. Shearer*, 17 *Mich.*, 55, 56 ; *Lyon vs. Yates*, 52 *Barb.*, 243, 244.

The third bill of exception presents for consideration the doctrine of the confusion of goods.

Assuming that the goods of the appellant were indiscriminately mixed with ·those of the mortgagor, it would not be competent for him to object this fact as against the mortgagee. His permissive act is as much binding on·him as that of the mortgagee.

The error consists in confounding *contiguity* with *confusion.* The doctrine asserted by the rejected instructions would close every commission house in the country.

There is nothing in the cases of *Hamilton vs. Rogers*, 8 *Md.*, 304, 321, and of *Chappell vs. Cox*, 18 *Md.*, 519, in any wise varying the common law principle, that due enquiry must be made by the attaching officer.  *Bond vs. Ward*, 7 *Mass.*, 126, 127 ; *Crosby vs. Baker*, 6 *Allen*, 295 ; *Roth vs. Wells*, 29 *New York*, 471.

BARTOL, C. J., delivered the opinion of the Court.

The appellee, plaintiff below, claimed title to certain goods and chattels, consisting of a stock of goods ·in a store, with the furniture and store fixtures, under a bill of sale, by way of mortgage, executed on the 24th day of June, 1869, by J. H. Smith.   The mortgage contained a provision entitling the mortgagor to retain possession of the property until default, which could not occur until the 24th day of June, 1870, that being the date fixed for the payment of the first instalment of the debt secured by the mortgage.

On the 19th day of October, 1869, the appellant sued out an attachment, under the Act of 1864, ch. 306, against Smith, and caused the same to be laid on the property conveyed by

the mortgage, and the same was seized by the sheriff and sold; and this suit was instituted by the appellee to recover damages for the alleged illegal seizure.

The declaration contains three counts: the first is *in case,* counting on the plaintiff's title under the mortgage; the second is in *trespass de bonis asportatis,* and the third in *trover.*

The Court below, at the instance of defendant, granted by consent an instruction to the jury which denied to the plaintiff the right to recover upon either the *second* or *third* counts of the declaration; the recovery was therefore exclusively upon the first count.

The first exception taken by the defendant was to the ruling of the Circuit Court, declaring the bond which had been given under the Act of 1864, for the purpose of obtaining the attachment, to be void, and the attachment proceeding illegal; and that the defendant had no right to offer evidence to impeach the bill of sale as fradulent against creditors.

There can be no doubt of the insufficiency of the bond. It was, perhaps, intended as the bond of John Wanamaker (the attaching creditor) as principal, and of Wm. H. Wanamaker and Robert Cathcart as his sureties; but John is in no respect bound; for in the body of the instrument it is declared to be the obligation of William H., and in the recital he is called the *"above bounden William H."*

By the second resolution in *Combe's case,* 9 *Coke,* 76, *b,* it was resolved that " when any has authority as attorney to do any act, he ought to do it in his name who gives the authority; for he appoints the attorney to be in his place, and to represent his person; and therefore the attorney cannot do it in his own name, nor as his proper act, but in the name, and as the act of him who gives the authority." And such is the law at this day with respect to deeds and other instruments under seal, except in so far as the same has been altered by the provisions of the Code, which have no application here. *Frontin vs. Small,* 2 *L. Raymond,* 1418; *Harper vs. Hamp-*

*ton,* 1 *H. & J.,* 622, 709; *Lessee of Clarke vs. Courtney,* 5 *Peters,* 318, 349.

Affixed to the bond are the name and seal of John, put there by William H., but it does not appear that he had lawful authority to bind his principal, it being conceded in the argument that the authority under which he claimed to act was verbal merely; it is not therefore the bond of John. Nor is William H. bound as principal, for it is expressly stated that he and Robert Cathcart bind themselves as *sureties,* and a party cannot be both principal and surety in the same obligation. This distinguishes this case from *Stewart vs. Katz,* 30 *Md.,* 334.

The bond being invalid, it follows that the attachment was " illegal and void," for so it is declared by the Act of 1864, section 41.

The defendant thus being without the protection of valid legal process, was it competent for him to impeach the bill of sale as fraudulent, as against the creditors of Smith the mortgagor? It is objected that it is not competent for him to do so, because he had not obtained any lien by judgment and execution, or other valid judicial process; and a number of authorities have been cited to show that in order to entitle a creditor to impeach a deed as fraudulent under the statute, it is necessary for him first to obtain a judgment, or other lien, upon the property conveyed by the deed. This general proposition is supported by the case of *Birely and Holtz vs. Stanley,* 5 *G. & J.,* 433, 452, and has long been the recognized law of this State.

By the Act of 1835, now embodied in the Code, Art. 16, section 35, it is provided that a creditor may maintain a bill in equity to set aside a fraudulent deed without having first obtained a judgment at law upon his demand. This provision has materially enlarged the rights of creditors and extended their remedies; but it is by its terms confined to proceedings in Courts of Equity, and cannot be construed as changing the rights of the parties in a case like this. The

general rules of law must apply. The defendant not having acquired a lien by attachment, or other valid legal process, cannot, merely because he is a creditor of the mortgagor, be permitted, in defense of an action for wrongfully and illegally seizing the goods, to impeach the mortgage as fraudulent against creditors. As between the parties to the mortgage, it is a good and valid conveyance; and third parties cannot impeach it at law, unless they have a lien upon the property; a mere creditor of the mortgagor having no *jus in rem*, cannot be heard to set up this defense either as a bar to the suit or in mitigation of damages. We therefore affirm the ruling of the Circuit Court in the first bill of exceptions.

*The second bill of exceptions* was taken to the refusal of the Circuit Court to permit the defendant to prove in mitigation of damages, that at the time of the seizure under the attachment, there was rent in arrear due upon the premises occupied by the mortgagor, in which the goods were, amounting to $1,048; that after the seizure by the sheriff and before the removal of the goods, there were filed with the sheriff, by the landlord, notices and affidavits of such rent in arrear, and that the sheriff in pursuance of such notices, and of an order of Court passed in the attachment case, paid over to the landlord the amount of rent so in arrear, out of the proceeds of the sales of the property seized.

The defendant was without the protection of valid legal process, and being a wrongdoer "he could not appropriate the property wrongfully seized either to pay a debt due to himself, or to any other creditor, except by the consent of the debtor or by the sanction of the law;" and therefore, if the rent had been voluntarily paid by the defendant or by the sheriff, (who was a co-trespasser,) the defendant could not be allowed for such payment in mitigation of damages. This proposition is supported by all the authorities. *Sowell vs. Champion*, 6 *Ad. & E.*, 407, (33 *E. C. L.*, 92;) *Gillard vs. Brittan*, 8 *Mee. & W.*, 576; *White vs. Binstead*, 76 *E. C. L.*, 303; *Attack vs. Bramwell*, 41 *L. J.*, 146, (*C. Law*, 1863.)

Many other cases might be cited, both English and American, to the same effect. The law is so correctly stated in *Addison on Torts*, 543, 664, 665.

But it is equally clear, both upon reason and authority, that if after the illegal seizure, the goods had been taken out of the hands of the defendant by legal process, as by execution at the suit of another; or if a distress had been actually levied thereon for rent in arrear, and the goods, or some of them, taken thereunder, such fact could be given in evidence in mitigation of damages. While the general rule is that for the wrongful taking and conversion of the plaintiff's goods, the measure of compensation is the value of the goods, and the wrongdoer will not be allowed *voluntarily* to appropriate the proceeds to the payment of the plaintiff's debts, or in any other way apply them voluntarily to his use without his consent; and claim thereby to reduce the amount of his liability. Yet if without the agency or act of the defendant, the goods have been by operation and judgment of law applied to the use of the plaintiff, his damages resulting from the unlawful act will be *pro tanto* diminished. In 2 *Greenleaf on Evidence*, sec. 276, the author, speaking of the measure of damages in actions of *trover* says: "If the plaintiff has himself recovered the property, or it has been restored to him and accepted, the actual injury occasioned by the conversion, including the expenses of the recovery, will form the measure of damages; and if the property in whole or in part has been applied in payment of the plaintiff's debt, or otherwise to his use, this may be considered by the jury as diminishing the injury and consequently the damages." There are some cases which support this last proposition; but taken in its broad unqualified terms, as stated by the author, it is not in accordance with the general current of authority. The distinction is between cases where the property, or its proceeds have been voluntarily appropriated by the defendant to the payment of the plaintiff's debt, or otherwise to his use, and those in which they have been so applied

by judgment or operation of law, as by legal process instituted by a third person. In the latter case this fact may be proved in mitigation of damages. The cases on this point are collected in 2 *Greenleaf's Evidence, sec.* 635 *a.* (*n.* 2.)

The decision of this exception therefore turns upon the question of the effect of the proceedings by the landlord, and of the Court's order under which the sheriff paid the rent.

In *Thomson vs. Balt. & Susq. Steam Co.,* 33 *Md.,* 312, it was decided that an attachment on warrant was not an execution within the meaning of VIII Anne, ch. 14, section 1, and consequently that the sheriff, who had seized goods under such attachment, was not liable to the landlord for so doing. But the goods being sold by the Court's order under the attachment, it was held that the landlord's remedy was to go into Court and claim the payment of the rent in arrear out of the proceeds ; and that he would be entitled to precedence by reason of his *quasi* lien on the goods. In this case the landlord resorted to that remedy, and the rent in arrear was paid; not by the voluntary act of the sheriff or of the defendant, but by the Court's order. It is true that the proceedings in attachment, being irregular, the landlord might have disregarded them, and instituted his distress, but he was not bound to do so; finding the goods in the custody of the sheriff, under color of legal process, he was not bound to determine for himself the question of the validity of the attachment, nor was he responsible for any errors or defects in the proceedings ; and having resorted to his remedy by filing his claim in Court duly authenticated, and obtained satisfaction, so far as the question before us is concerned, the case stands as if the landlord had proceeded by distraint to recover the rent in arrear.

The property was to that extent appropriated to the use of the plaintiff in satisfaction of a debt for which it was liable, not by the voluntary act of the defendant, and it is reasonable and just that the measure of recovery in this suit should be diminished *pro tanto.* In our opinion therefore the evidence

stated in the second bill of exceptions ought to have been admitted.

*The third bill of exceptions* brings before us the prayers.

The first prayer of the plaintiff and the second and seventh of the defendant, have been disposed of in deciding the first exception; they relate to the question of *bona fides* of the mortgage, which we have said it was not competent for the defendant to impeach, being a mere creditor of the mortgagor without any lien upon the property. We affirm the action of the Circuit Court upon these prayers. In our opinion there was no error in rejecting the third, fourth, fifth and sixth prayers of the defendant. There was no evidence in the case to support the proposition that the goods embraced in the mortgage were intermingled and confused with other goods so that they could not be distinguished, upon due care and inquiry which it was the duty of the officer and the defendant to make.

The *second* prayer of the plaintiff and the *eighth* of the defendant relate to the measure of damages. By the former, which was granted, the jury were instructed that they "were entitled to give punitive damages." We think this was error, as was said in *Moore, et al. vs. Schultz*, 31 *Md.*, 423, "ordinarily in actions of this character, the plaintiff is entitled to recover, if there be no circumstances of aggravation, the value of the goods taken with interest to the time of trial." "But if the trespass be committed in a wanton and aggravated manner, indicating malice, or a disregard of the rights of others, and the circumstances of the case afford no justification," exemplary or punitive damages may be allowed.

The same rule is well stated in *Selden vs. Cashman*, 20 *Cal.*, 56, and in *Rose vs. Story*, 1 *Barr*, (*Pa.*,) 191, 197. In this case there is no evidence of wanton or malicious wrong on he part of the defendant, he was in the pursuit of his legal remedy under the statute, and through inadvertence, failed to comply with the prerequisites of the law, and thus became liable to this suit, but there is nothing in the facts or circum-

stances of the case to subject him to punitive damages. We therefore think the Circuit Court erred in leaving to the jury the discretion to give punitive damages.

It is stated in the third bill of exceptions, "that the defendant proved that no part of the proceeds of the goods seized and sold under the attachment was paid over to him, but that the whole net proceeds were paid to Emill Sutro, the assignee in bankruptcy of said Smith," (the mortgagor.) No question was raised in the Court below upon this evidence, either as it might affect the right of the defendant to impeach the bill of sale as fraudulent under the Bankrupt Law, or as affecting the measure of damages; it has however been called to our attention by the notes of counsel filed since the argument. Without expressing any opinion upon the questions suggested, we refer to *Leake vs. Loveday,* 4 *M. & G.,* 972; *Bolander vs. Gentry,* 36 *Cal.,* 105, and *Hanson vs. Herrick,* 100 *Mass.,* 323.

> *Judgment reversed and*
> *new trial ordered.*

(Decided 16th May, 1872.)