## ALBERT S. GILL *v.* PHYSICIANS AND SURGEONS BUILDING, INCORPORATED, GARNISHEE, ET AL.

*Attachment  Proceeding — Affidavit  to  Declaration — Bond — Rights of Amendment.*

Code, art. 9, sec. 4, requiring, as a condition to the issue of an attachment, in cases arising *ex contractu,* where the damages are unliquidated, the filing of a declaration setting out specially and in detail the breach of contract complained of, was complied with by a declaration which contained a special count alleging all the elements of a legally enforceable contract of employment, its date, the object of the employment, its performance by plaintiff, defendants' agreement to pay for the services, and their refusal to do so.                    pp. 398, 399

On a motion to quash an attachment on original process for unliquidated damages arising *ex contractu,* an objection that "there was no sufficient affidavit filed" was too general, when there were two affidavits by plaintiff in the proceedings, one designed to comply with Code, art. 9, sec. 4, and the other with section 44 of such article.                    p. 399

An affidavit filed with the declaration, which verifies the cause of action, the voucher on which the declaration is based, cannot be objected to as varying from the declaration.                    p. 399

On a motion to quash an attachment, objections such as those based on supposed defects in the affidavit to the declaration, or in the bond, should be specific.                    pp. 399, 400

Where an affidavit, filed in attempted conformity with Code, art. 9, sec. 44, which requires an affidavit to the declaration in the case of an attachment for unliquidated damages arising *ex contractu,* referred in terms to the voucher or bill of particulars only, and not to the declaration, the omission constituted merely an irregularity, which could be supplied under Code, art. 9, sec. 28, authorizing amendment of the affidavit and other papers in attachment proceedings.                    pp. 400, 401

Code, art. 9, sec. 28, providing that the affidavit, short note, etc., "and all other papers in attachment proceedings," may be amended, "so that all attachment cases may be tried on their real merits and the purposes of justice subserved," is broad enough to permit an amendment of the bond by transposing the names of the parties in the condition clause, so as to give the protection intended by the statute, which the bond **originally** failed to give.                                    pp. 401-407

While the attachment statutes will be strictly construed in determining what steps must be taken to confer jurisdiction on the court issuing the attachment, yet in determining whether the attaching creditor's acts comply with these requirements, the statutes will be more liberally construed.          p. 405

An order quashing an attachment should be reversed, where the only defects justifying such action could have been corrected by amendment, and plaintiff offered to amend.          p. 407

*Decided June 10th, 1927.*

Appeal from the Baltimore City Court (OWENS, J.).

Attachment proceeding by Albert S. Gill against S. R. Norman and others, in which the writ was laid in the hands of the Physicians and Surgeons Building, Incorporated, as garnishee. From an order quashing the attachment, the plaintiff appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Arthur W. Machen, Jr.,* and *Edward M. Hammond,* for the appellant.

*Isaac Lobe Straus,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court quashing an attachment on original process for unliquidated damages arising *ex contractu* against a non-resident,

issued at the suit of Albert S. Gill, the appellant, against the Physicians and Surgeons Building, Incorporated, garnishee of S. R. Norman, and other appellees.

The proceeding was begun on November 7th, 1925, "by the filing of an affidavit for attachment for unliquidated damages against non-resident debtors, a declaration, affidavit, and itemized bill." On November 20th, 1925, the defendants moved to quash the attachment for reasons referred to below. After that motion had been filed, nothing further was done in reference to it until March 17th, 1927, when the plaintiff asked leave to amend the affidavit to the *nar.* and also to file an amended attachment bond, and on the same day the court refused the petitions and quashed the attachment. These rulings are the subject of the three exceptions found in the record, the first of which relates to the court's refusal to allow the affidavit to the *nar.* to be amended, the second to its refusal to allow an amended bond to be filed, and the third to its action in quashing the attachment.

The plaintiff's claim was for legal services, and hence, for unliquidated damages (*Steuart v. Chappell,* 98 Md. 531), and the proceeding therefore could only have been brought under section 44, article 9, of the Code, which in part provides that:

> "Attachments may also be issued against non-resident debtors in cases arising *ex contractu,* where the damages are unliquidated, * * * but in such cases no attachment shall issue until a declaration shall have been filed, setting out specially and in detail the breach of contract complained of, * * * verified by the affidavit of the plaintiff, * * * and until a bond shall be filed similar in all respects to the bond required to be given in cases on attachments on original process for fraud, as prescribed by section 39 of this article, * * * the practice and pleading shall in all other particulars conform to the practice and pleadings against non-resident and absconding debtors in actions *ex contractu* for liquidated damages."

Section 39, referred to in section 44, provides for bonds in cases of attachments on original process for fraud.   Under it the plaintiff must execute a bond to the State of Maryland, with security to be approved by the clerk in double the sum alleged to be due from the defendant to the plaintiff,

"conditioned for satisfying all costs which may be awarded to such defendant or defendants, or to any other person interested in the proceedings, and all damages which the defendant or defendants, or any other person interested in the proceedings, shall suffer because of the wrongful suing out of said attachment, which bond shall be filed in the office of the clerk issuing such attachment, which bond shall be substantially in the following form: The condition of this obligation is such, that whereas the above bounden .......... hath on the day of the date hereof, ordered an attachment out of (naming the court from which said attachment shall issue) at the suit of.......... vs. .......... for the sum of .........., and the same being about to be sued out of said court, returnable on the .......... day of .......... next; now if the said .......... shall prosecute his suit with effect, or in the case of failure thereof shall well and truly pay and satisfy the said .......... and any other person interested in the proceedings all such costs of said suit, and all such damages as he or they shall or may suffer or incur by reason of the wrongful suing out of such attachment, then the above obligation to be void, otherwise to remain in full force and effect.   Every attachment hereafter issued without a bond and affidavit taken as aforesaid is hereby declared illegal and void and shall be dismissed."

Section 4 of the same article provides that:

"No attachment shall issue (except as hereinafter mentioned), unless there is an affidavit that the debtor is bona fide indebted to the creditor in the sum of .........., over and above all discounts; and at the time of making the affidavit, the creditor shall produce the bond, account or other evidence of debt, by

which the said debtor is so indebted; and shall also
make affidavit that he knows, or is credibly informed
and verily believes, that the said debtor is not a citi-
zen of this state, and that he doth not reside therein;
or if the said debtor resides in this state, that he doth
know, or is credibly informed and verily believes, that
the said debtor hath absconded."

In attempting conformity with these requirements, the
plaintiff filed an affidavit in substantial compliance with sec-
tion 4, article 9, of the Code, a declaration, to which was an-
nexed an. affidavit by the plaintiff "that there is justly due
and owing by S. R. Norman, George T. ·Penny, James E.
Latham, Harold C. Kenney and Sarah B. Tull (née
Gardner) the defendants in the within named case, to the
plaintiff on annexed itemized bill (the cause of action in
said cause) the sum of five thousand dollars ($5,000.00)
(with interest from * * *) over and above all discounts, to
the best of his knowledge and belief," a voucher or account
setting out the items and details of the services alleged to
have been rendered, and a bond duly approved by the clerk.
Upon the filing of these papers an attachment issued, which
was laid in the hands of the Physicians and Surgeons Build-
ing, Incorporated, as garnishee. After that the garnishee
appeared generally and pleaded *nulla bona,* and the defend-
ants appeared specially and moved to quash the attachment
on these grounds: (1) Because the court was without juris-
diction to issue the attachment; (2) because there was "no
sufficient affidavit filed; (3) because there was no sufficient
voucher in the cause; (4) because there was no sufficient
declaration; (5) because there was a variance between the
declaration and the affidavit.

The objections to the voucher and the declaration respec-
tively were not seriously pressed in this court, and in our
opinion are without force. The voucher sets out in meti-
culous detail the nature and kind of service rendered by
the plaintiff to the defendants. and fully complied with the
requirements of the statute. Nor is there any apparent de-

fect in the declaration.   It contains in addition to the six
common counts a special count alleging all the elements of a
legally enforceable contract of employment, the date of the
contract, the object of the employment, the performance of
the same by the plaintiff, the agreement of the defendants
to pay for such services, and their refusal to do so.   The act
only requires the plaintiff to set out "specially and in de-
tail" the breach of contract complained of, and since the
only breach of which the plaintiff complains is the failure
to pay him reasonable compensation for his services, and
since he did describe that breach in sufficient detail in the
seventh count, the declaration was sufficient to comply with
the terms of the statute.

The objection that "there was no sufficient affidavit filed"
is too general to be the basis of an adjudication.   There are
two affidavits in the proceedings, of which one is designed
to comply with section 4, article 9, *supra,* and the other with
section 44 of the same article, and there is nothing in the
motion itself to indicate to which affidavit it refers.   Nor
can we see any merit in the objection that there is a variance
between the affidavit and the declaration, assuming that
reference is made to the affidavit filed with the declaration.
Because whatever else may be said of that affidavit, it cer-
tainly does not vary from the *nar.,* since the only thing it
does is to verify the cause of action, the voucher upon which
the *nar.* is based.   There remains then, of the grounds speci-
fied in the motion, only the objection to the jurisdiction,
which is also phrased in very general language.   But since
such an objection can be made at any time before the case
is finally disposed of on appeal (*United States Express Co.
v. Hurlock, Excr.,* 120 Md. 112), and since it appears that
it was in fact based upon supposed defects in the affidavit to
the declaration, and in the bond, and that those matters were
actually considered by the trial court, we will assume that
those questions are properly before us, and deal with them
accordingly, although in doing that we are not to be taken
as approving the form of that objection, or overruling *De*

*Bearn v. De Bearn,* 119 Md. 430, or *Robertson v. Beall,* 10 Md. 125, which require that such objections as those relied upon by the appellee must be set out specifically. 6 *C. J.* 444.

The objection to the affidavit to the declaration is that it verified only the voucher, or bill of particulars, and made no reference to the declaration. Inasmuch as it would have been impossible to verify the cause of action without at the same time verifying the declaration, which was based upon it and nothing else, this is a highly technical objection, but it is unnecessary to pass directly upon it, because, before the court acted upon the motion to quash, the plaintiff asked leave to amend the affidavit by adding thereto the words "and that the matters and facts set forth in the aforegoing declaration are true as therein set forth and that the defendants are indebted to the plaintiff in the cause of action set forth in said declaration as therein set forth," which would have removed any possible objection as to it. But the court overruled that motion, and refused to permit the amendment. Assuming that the amendment was necessary, that ruling was erroneous. Section 28, article 9, of the Code, *supra,* provides that "the affidavit * * * and all other papers in attachment proceedings may be amended in the same manner and to the same extent as the proceedings in any other suits or actions at law, so that all attachment cases may tried on their real merits and the purposes of justice subserved; nor shall any attachment proceedings be quashed or set aside for any defect in mere matter of form." Prior to 1898 this section did not refer specifically to affidavits, and such cases as *Blair v. Winston,* 84 Md. 361, and *Halley v. Jackson,* 48 Md. 260, decided prior to that time and based upon the fact that the statute did not refer specifically to affidavits, do not control the construction of it after it has been amended so as to include such a specific reference, further than this, that the amendment was obviously adopted to correct what the Legislature regarded as a defect in the statute pointed out by those cases. The appellees' contention that the affidavit was not intended to verify the declaration is in our opinion not sound, because he had undoubtedly filed one affidavit to comply with

section 4 of the article, and there was no possible reason for
filing another except to comply with the requirements of sec-
tion 44.   And in fact it did verify the declaration because,
in verifying the bill of particulars, and deposing that the de-
fendants were justly indebted to him in the amount named
therein, over and above all discounts, the plaintiff necessarily
verified every essential fact alleged in the declaration.  Under
such circumstances we cannot hold that the affidavit was void
and of no effect whatever, but in our opinion the omission of
a formal reference to the declaration was a mere irregularity,
which under the statute could properly be supplied by amend-
ment.

The second ground urged for quashing the attachment was
that the original bond filed with the affidavit was "fatally de-
fective and illegal."   The bond was duly executed by Gill as
principal and the Maryland Casualty Company as surety,
and it stated its obligation in these words:

> "We, Albert S. Gill and Maryland Casualty Com-
> pany, a corporation of the State of Maryland, Balti-
> more, Maryland, all of Baltimore City in the State
> of Maryland, are held and firmly bound unto the State
> of Maryland, in the full and just sum of ten thousand
> dollars, current money to be paid to the said state, its
> certain attorneys, or assigns, to the payment whereof
> well and truly to be made and done, we bind ourselves,
> our heirs, executors and administrators, firmly by
> these presents."

But when it came to state the condition under which it
could be discharged, it reversed the positions of the parties,
so that its discharge depended upon the successful prosecu-
tion by the defendants of "their suit" against Gill, instead
of upon the successful prosecution by Gill of his suit against
them.   Literally it is in these words:

> "The condition of this obligation is such, that where-
> as the above bounden Albert S. Gill hath, on the day
> of the date hereof, ordered an attachment out of the
> Baltimore City Court, at the suit of Albert S. Gill vs.
> S. R. Norman, George T. Penny, James E. Latham,

Harold C. Kenney, Sarah B. Tull (née Gardner),
for the sum of five thousand dollars and no cents, and
the same being about to be sued out of said court,
returnable on the second Monday of November next.

"Now, if the said S. R. Norman, George T. Penny,
James E. Latham, Harold C. Kenney, and Sarah
B. Tull (née Gardner) shall prosecute their suit with
effect, or in case of failure thereof, shall well and
truly pay and satisfy to the said Albert S. Gill and
any other persons interested in these proceedings, all
such costs of said suit, and all such damages as he or
they shall or may suffer or incur by reason of the
wrongful suing out of said attachment, then the above
obligation to be void, otherwise to remain in full force
and effect."

Before the motion to quash had been determined, the
appellant offered to file, in the place of the original bond,
a new bond, which would comply strictly and literally with
the terms of the statute, but the court refused to allow the
amendment, and that ruling was the subject of the second
exception. Why this amendment was not allowed is not
apparent. The statute, while not referring specifically to
bonds, does explicitly say, after referring to the affidavit,
short note, declaration, voucher, pleadings, interrogatories,
claim of property, that "all other papers in attachment pro-
ceedings" may be amended so that attachment cases may
be tried on their "real merits and the purposes of justice
subserved." This language would certainly seem to be
broad enough to permit an amendment to the bond, and it
must be so construed if we are to give any effect at all to
the words "all other papers."

The earliest legislation on the subject in this state seems
to have been by chapter 54 of the Acts of 1845, which au-
thorized the amendment of the writ of attachment. That
was supplemented by chapter 324 of the Acts of 1846, which
provided that no attachment should be quashed "or dismissed
by reason of any defect or imperfection in the affidavit upon
which the same was issued, or the warrant of attachment, or

other process or proceedings in said cause; but that the court before which any such case is pending, shall allow all and every amendment in such affidavit, warrant, process or proceedings, so as to bring the cause fairly to trial upon its merits, the party asking leave to amend, paying the costs of the term at which the amendment is made." By chapter 328 of the Acts of 1846, the privilege of correcting misnomers and supplying the omission of names in the writ itself by amendment, given by the Act of 1846, ch. 324, was extended to "all cases of mistake" in attachment proceedings. And the law was in that shape until chapter 507 of the Acts of 1888 was passed, which provided that: "Attachment proceedings may be amended in the same manner and to the same extent as any other suits or actions at law, so that the same may be tried on their real merits and the purposes of justice subserved; nor shall any attachment proceedings be quashed or set aside for any defect in mere matter of form." Ten years later, by chapter 44 of the Acts of 1898, the section was again repealed and re-enacted in its present form. Throughout that whole period the policy of the state, as written by these successive statutes, has been to broaden the power of amendment, so that attachment cases might be tried on their "real merits and the purposes of justice subserved."

The proceeding is statutory, in derogation of the common law, confers upon the courts only a limited jurisdiction, and is said not to be favored by the courts, and the remedy does not exist at all in a given case until every statutory requirement has been fully and strictly complied with, which must appear on the face of the record. So much may be conceded. *Hodges and McLane on Attachment,* secs. 11, 12; *Brantly's Digest.* But after conceding that, it is still apparent that the legislation has a definite legal purpose and intent, to which the courts should give effect when that can be done without violence to established legal principles. That purpose is thus stated in *Barr v. Perry,* 3 Gill, 313: "The great purposes of the act, said the Supreme Court of

New Jersey, in the case 1st *Green,* 134, are, by seizing the property of a debtor, to compel his appearance, to answer the demand of the plaintiff; when from non-residence or flight, he is beyond the process of our judicial tribunals, and on his failure of appearance, to apply such property to the just end of satisfying his debts." There is nothing illegal or wrong in such a purpose, and it should ordinarily be the duty of the courts to effect it by construing statutes creating the remedy liberally so as to accomplish that purpose. And no doubt such a policy would have been adopted but for the fact that the remedy is in derogation of common right, and that the courts in administering it act in the exercise of a special limited jurisdiction. As a result of this conflict between a just, honest, and legal legislative intent, and well established legal principles long and firmly embedded in the common law, there has been some difference in the principles adopted by different jurisdictions for their guidance in construing attachment statutes. *Shinn on Attachments, sec.* 8. Nor has that conflict been wholly absent from the decisions of this Court. Although it was held in *Barney v. Patterson,* 6 H. & J. 201, that an attachment after two *non ests* was not in derogation, but rather in mitigation, of the common law, that decision, while referred to, was not expressly adopted in *Risewick v. Davis,* 19 Md. 82, and what has come to be the established rule was very clearly stated in *Evesson v. Selby,* 32 Md. 345, where it is said: "The doctrine is familiar, that the proceedings in attachment being wholly statutory, and in contravention to the common law, they must strictly follow the provisions of the statute under which they are authorized. * * * It is true, as argued on the part of the appellants, that there need not be a literal compliance with the statute, but a substantial compliance is all that is necessary. *Shivers v. Wilson,* 5 H. & J. 130." And to the same effect is this statement in *Coward v. Dillinger,* 56 Md. 60: "All property, however, within the limits of the state, whether belonging to residents or non-residents, is subject to its laws, and the state has the

right to prescribe how and in what manner such property shall be subjected to the claims of creditors.   It is upon this principle that legislation in regard to attachment laws is founded.   The proceeding is *in rem*—against the *res,* and not against the person.   Being then a jurisdiction derived from statutory law, no principle is better established than that the attachment proceedings must upon their face show affirmatively that the requirements of the statute have been substantially complied with, otherwise the court issuing the attachment would be acting without jurisdiction and the judgment thereupon rendered would be void."

As a result of these and later cases, such as *Hedrick v. Markham,* 132 Md. 162, the principle has become firmly established in this state that, while the attachment statutes will be strictly construed in determining what steps must be taken to confer jurisdiction on the court issuing the attachment, yet in determining in a given case whether the acts of the attaching creditor amount to a compliance with those requirements, the statutes will be more liberally construed, and that view is stated in *Tonn v. Linders,* 116 Md. 55.   In that case the writ of summons was directed to the sheriff of Wicomico County, where the attachment issued, instead of to the sheriff of Worcester County, where the defendant resided, but the defendant happened to be in Wicomico County at the time and was duly summoned.   The defendant moved to quash the attachment on the ground that no writ of summons directed against him had been issued to the sheriff of Worcester County, as required by the statute.   But Judge Urner, speaking for this Court, in disposing of that objection, said: "When the whole object of this requirement has been gratified by the actual and regular service of a formal subpoena granted by the court whose jurisdiction is invoked, it would seem unduly technical to quash the attachment simply on the ground that the summons was not sent to a different county. It has been held that a substantial compliance with the terms of the statute is sufficient to give the court jurisdiction. *Gunby v. Porter,* 80 Md. 402; *Evesson v. Selby,* 32 Md. 346; and the general policy of the law is indicated in a liberal pro-

vision for amendments 'so that all attachment cases may be· tried on their real merits and the purposes of justice sub- served,' and in the declaration that no such proceeding shall 'be quashed or set aside for any defect in mere matter of form.' "

The steady broadening of the right of amendment by suc- cessive legislative acts, so as to obviate the failure of attach- ment proceedings through errors and omissions which could readily be corrected or supplied, is in itself a sure index of a legislative intent and policy that, where the right to the remedy actually exists, it is not to be defeated by any error in the jurisdictional acts required by the statute, which can be corrected by seasonable amendment without injury to the defendant. That being true, it is the duty of the courts to give effect to that intent, where that can be done without violence to the clear language of the statute. Note (d), *Alexander v. Worthington*, 5 Md. 472.

Applying these principles to the question under con- sideration, in our opinion the language of section 28 of article 9, *supra*, is broad enough to authorize an amendment to the bond filed in this case. The procedure in such cases is in no sense ritualistic, but each step has a definite and substantial purpose and reason. The object of the bond is to protect from loss the defendant, the garnishee, and every other person who may in fact be injured by the unjustified institution of the proceeding. If that purpose can be accom- plished as well by an amended bond as by an original bond, there is no apparent reason why the plaintiff should not be permitted to file such an amended bond, or why, when filed, it should not be regarded as a complete compliance with the statutory requirement, requiring the filing of a bond as a condition precedent to issuing the writ.

Such cases as *McLuckie v. Williams,* 68 Md. 262, and *Wanamaker v. Bowes,* 36 Md. 42, are clearly not in con- flict with that view. In each of these cases the Court was not dealing with an application to amend a bond, but with the sufficiency of the bonds respectively filed therein. In *Mc- Luckie v. Williams, supra,* the bond ran to the defendant

and not to the State, and therefore clearly failed to meet the requirements of the statute, while in *Wanamaker v. Bowes, supra,* the bond was never executed by or for the principal, and the only question before the Court in those cases was whether the attachments respectively issued therein were void because no valid bond had been filed as required by the statute.    Which, of course, was a different question from one involving the right of the plaintiff to correct a defective bond so as to give the protection intended by the statute which the original bond failed to give.    In our opinion, therefore, the court erred in refusing to permit the plaintiff to amend his bond in accordance with his petition.    The bond in its original form was mere nonsense, because of the transposition of the names of the parties in the condition clause. While it is probable that it was intended to comply with the requirements of the statute, it does not do so, and to hold that it does would not be to construe the bond but to write a new one.    We have examined the authorities cited by the appellant to that point, but none of them go as far as we would have to go to sustain the bond in this case, and, if we were required to decide the question, we would find it difficult to hold that the original bond was valid.    But inasmuch as the plaintiff has offered to file an amended bond which is valid, that question becomes immaterial and need not be decided.

The third and last exception relates to the action of the trial court in quashing the attachment.    Since the only defects which would have justified such action could have been corrected by amendment, and since the plaintiff offered to make the necessary amendments, there was error in this ruling also.    Because of these errors, it will be necessary to reverse the order appealed from and remand the case for further proceedings.

*Order reversed and case remanded for further*
*proceedings, with costs to the appellant.*

PARKE, J., dissents.