# LEWIS H. BLAIR *vs.* LEWIS PHILIP WINSTON.

*Attachment Against Non-resident—Acquisition of Domicil in this State
    by Citizen of Another State—Affidavit in Attachment Cannot be
    Changed by Amendment—Maker and Endorser of Promissory
·   · Note not Jointly Liable.*

In order to support an attachment against the property of a defendant
    as a non-resident debtor, the non-residence of the defendant is as es-
    sential as his indebtedness, and if in fact the defendant is a resident
    of this State, the attachment is *in fraudem legis*, and will be quashed.

When a citizen of another State comes here with a *bona fide* intention
    of making this State his place of residence, he cannot be proceeded
    against as a non-resident, whether he has resided here long enough
    to acquire a right to vote or not.

In an attachment against a party alleged to be a non-resident the fact
· that he can be or is summoned does not of itself defeat the attach-
    ment if he is really a non-resident, but the fact that he is summoned
    in the *capias* case is a circumstance to be considered in determining
    whether he is a non-resident or not.           ·  ··

Defendant, a former citizen of Richmond, Va., came to Baltimore in
    August, 1895, and rented rooms in a private house, where he con-
    tinued to reside.   He communicated to several persons his purpose
    to make Baltimore his home, and the newspapers of both Baltimore
    and Richmond announced his change of residence.   He had busi-
    ness interests in Baltimore, and testified that he came there with the
    intention of making that city his home.   An attachment against him,
    as a non-resident of this State, was issued on·November 7, 1895, and
    the writ of summons was served on him shortly afterwards.   *Held,*
    that the defendant had acquired a residence in Baltimore, and the
    attachment should be quashed.         ·

Under Code, Art. 9, sec. 27, providing for the amendment of attach-
    ment proceedings, no change in the substance of the affidavit can be
    made.

An attachment against A and B as non-residents was based upon
    promissory notes made by A and endorsed by B.   There was no
    allegation that the parties were joint-makers, but the short note con-
    tained the common counts and counts against an endorser.   The
    affidavit was that A and B were indebted to the plaintiff.·   *Held,* that
    the attachment should be quashed because the affidavit included A
    and B as jointly bound, while the notes sued on as the cause of ac-

tion showed separate and distinct liabilities, *i. e.*, on the part of A as maker and of B as endorser, and no amendment of the affidavit could be made by striking out the name of A as one of the defendants.

Appeal from an order of the Superior Court of Baltimore City quashing a writ of attachment issued against the appellee as a non-resident debtor.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, ROBERTS and BOYD, J. J.

*Hyland P. Stewart* for the appellant.

*Fielder C. Slingluff* and *William T. Donaldson* for the appellee.

BOYD, J., delivered the opinion of the Court.

An attachment was issued out of the Superior Court of Baltimore City by the appellant against the appellee and one L. P. Routt as non-residents of this State. The appellee having made a motion to quash the attachment, the case was tried before the Court, and the motion to quash sustained. The plaintiff asked leave to amend by striking out the name of L. P. Routt from the proceedings, which was granted, and the amendment made. The principal controversy was whether the appellee was a non-resident of this State, within the meaning of our attachment laws, and although such questions involve both law and fact, this case must be determined mainly from the evidence in the record, as there is but little difficulty about the law.

It was early held in this State that to warrant an attachment on that ground the non-residence of the debtor was as essential as his indebtedness, and that if in point of fact the defendant be a citizen of the State and residing therein when the attachment is issued the proceeding is *in fraudem legis*. *Barr, Garnishee,* v. *Perry,* 3 Gill, 318. The original object of the proceeding by attachment against non-residents was to compel an appearance and require the defendant to give bail for his appearance, and although since imprisonment for

debt has been abolished in this State the practice has changed, the reason for permitting such writs to issue, when there is not alleged to be fraud or other kindred cause, must still rest upon the theory that the defendant is presumably beyond the usual and ordinary process of Court and cannot be reached by it. Of course the fact that he can be or is summoned does not of itself defeat the attachment, if he be a non-resident, but when he is summoned in the *capias* case it is a circumstance to be considered in connection with the other facts. In this case the summons was served shortly after the attachment was issued, which was on the 7th day of November, 1895.

The defendant was a resident of Richmond, Virginia, where he seems to have been a man of some prominence, and had been sheriff of that city. He was not married and lived with his parents in Richmond, although he was forty years of age. He arrived in Baltimore on the 15th day of August, 1895, and had been there constantly from that time until this proceeding was commenced. He testified that he went there with the intention of taking up his residence and making that city his home. On the 21st day of August, 1895, he rented a room, which he was still occupying when the case was tried below. The Baltimore "Sun" announced that he had taken up his residence in Baltimore and the Richmond papers also published the fact. He had business interests in the city of Baltimore before he came, and commenced at once to get others interested in different enterprises he had in view. He told a number of persons he intended to make Baltimore his home. Mrs. Raabbe, his landlady, testified in answer to the question as to what his object was in going to her house on August 21st, 1895, that "He wanted to get a room and wanted to make Baltimore his permanent home." The testimony of Messrs. Hemsley, Slingluff, Satterwhite, Stratton, Winter and Whitman was to the effect that he declared to them his intention of making Baltimore his home, and he seems to have been making efforts to establish himself in some kind of business

there.   The only testimony that is in conflict with his own
evidence, the newspaper announcements and the above
named witnesses as to his intention to make Baltimore his
home, is that of Messrs. Powell & Prior.   They say that he
told them in the latter part of October, 1895, that he con-
sidered Richmond his home and expected to return there.
The circumstances leading up to that statement as detailed
by those witnesses are to say the least peculiar.   Mr. Powell
says he asked him " if he was going to vote ; if he had got-
ten a transfer, and he said not."   As the defendant had
only been in Baltimore a few months, it is rather remark-
able that such a question could have been seriously asked,
and it may be, as the defendant testified, that he was jesting
with Mr. Powell.   But however that may be, the statements
attributed to him by those gentlemen are in conflict with
the defendant's evidence and acts, with the published an-
nouncement in the Baltimore " Sun " and the Richmond
papers, as well as those made by the defendant to six or
more witnesses.   It is evident that there was either some
misunderstanding on the part of those gentlemen as to what
he said or meant, or else he told them a different story from
what he told others.   Mr. Powell admits that he told him
repeatedly " that Baltimore was good enough for him and
that he liked Baltimore, and at different times said that if
he could make a business arrangement there he would have
to do it."   Mr. Prior said he saw in a Richmond paper the
statement that " Mr. Winston had gone to Baltimore, which
place he proposed to make his home."   The impression
made upon his mind was that the defendant had involved
himself in some trouble and would remain in Baltimore until
that matter was settled, but there is no evidence in the rec-
ord to justify us in reaching that conclusion.   The weight
of the evidence is decidely to the effect that the defendant
had settled in Baltimore with the intention of making it his
residence.   If an attachment had been issued in Virginia
against him as a non-resident and the evidence in this rec-
ord had been produced, at the trial, there would have been

no hesitation in holding that he was no longer a resident of that State. It is true that he had not been in Baltimore long enough to acquire a political residence there, such as would enable him to vote, but that is not necessary to protect him against attachments. When a citizen of another State comes here with a *bona fide* intention of making this his residence, he cannot be proceeded against in this State as a non-resident, whether his residence has been long or short.

It has been intimated, however, that the defendant was in this State merely for the purpose of evading creditors, or others in Virginia, and therefore was not a *bona fide* resident of Baltimore. But we do not find any evidence to sustain that position. Mr. Collins, an attorney from Richmond, who represented the plaintiff, testified among other things to an effort he made to have an interview with Winston, and the brief of the appellant refers to it, to show that Winston was hiding from Collins. The record, however, does not justify that statement. Mr. Collins said that he saw the defendant and his brother, John G. Winston, a practicing lawyer from Richmond, at the Rennert Hotel in Baltimore; that the defendant was in the room with the door ajar, and he and John G. Winston were just outside of the room. When he requested an interview with the defendant in reference to Mr. Blair's matters, he declined. There was no hiding from Collins in such way as would reflect upon the *bona fides* of the residence of the defendant, but he only did what he had a perfect right to do—decline to talk with the attorney representing the other side. There may be some evidence in the record tending to show that the defendant was possibly endeavoring to keep his money from the reach of his creditors, but that is not the question before us and it was not presented in such way as to reflect upon the question of residence, *vel non*, of the defendant in this State. We think the Court was right in quashing the attachment on the ground that the evidence showed the defendant was a resident of Baltimore.

The only other reason urged before us for quashing the attachment was that the proceedings were fatally defective because the suit was against Routt and Winston jointly, whilst the causes of action showed that there was not a joint liability, but that Routt was maker and Winston endorser of the notes filed. The affidavit states that "a certain L. P. Routt and Lewis Philip Winston, not being citizens of the State of Maryland and not residing therein, are justly and *bona fide* indebted unto him, the said Lewis H. Blair," etc., and the certificate of the notary before whom the affidavit was made, states that Blair produced before him three negotiable notes on and by which the said Routt and Winston are so indebted. Two of the notes are signed by L. P. Routt and payable to "myself or order," and endorsed by Routt and then by Winston, and the other is signed by Routt, payable to Lewis P. Winston or order, and endorsed by him.

There is no allegation or suggestion in the short note that Routt and Winston were joint makers, but there are three counts on the notes in the form usual in declaring against an endorser, and six common counts. It is manifest that the proceedings were fatally defective, unless they could be cured by amendment, under the Act of 1888, chapter 507 (sec. 27 of Art. 9 of the Code). Prior to that Act the identical question had been settled in *Halley, Executor*, v. *Jackson et al.*, 48 Md. 254, and the Court held that as the law then stood it could not permit an amendment of the affidavit made before a notary public, or the warrant of the justice of the peace, which was then required. Did the Act of 1888 authorize amendments which would cure such defects as those suggested in these proceedings? It reads : " Attachment proceedings may be amended in the same manner and to the same extent as any other suit or any action at law, so that the same may be tried on their real merits, and the purposes of justice subserved ; nor shall any attachment proceedings be quashed or set aside for any defect in mere matters of form." That would authorize an

amendment of the writ and short note, and if the affidavit is made before the Clerk of the Court, a defect of mere form might be corrected, but under no circumstances can the Court change the substance of the affidavit, whether it be made before the clerk or some other authorized officer of the law. The very foundation of this proceeding was the affidavit, and in it the plaintiff swore—not that the defendant alone was indebted to him, but that " L. P. Routt and Lewis Philip Winston were indebted to him." If the name of one is stricken out, then the affidavit as it remains in the case, differs materially from that upon which the attachment was issued. In some of the States the statutes permit new affidavits to be filed, and an opportunity given to the plaintiff to thus amend before an attachment can be quashed, but our statute has not authorized the substitution of a new affidavit for the one on which the attachment was based, and therefore when there is a defect in the *substance* of the affidavit it cannot be cured by amendment. The Court below had no power to allow an amendment of the affidavit, and the attachment should have been quashed because the affidavit included the two parties as jointly bound on the notes sued in, whilst the notes themselves show separate and distinct liabilities on the part of the one as maker and of the other as endorser. 48 Md. 261. Either ground urged in this Court was sufficient, therefore, to quash the attachment, and the judgment must be affirmed.

*Judgment affirmed, with costs to the appellees.*

(Decided December 3rd, 1896).