# KENDRICK & ROBERTS, INCORPORATED, *vs.* WARREN BROTHERS COMPANY.

*Requirements as to Conduct of Business in This State by Foreign Corporation—Effect of Non-Compliance with Statute—Compliance After Institution of Suit—Judgment Against Adjudicated Bankrupt With Stay of Execution—Work Done Not in Conformity With Sealed Contract, but Accepted—Assumpsit—Amendment of Voucher in Attachment.*

Code, Art. 23, sec. 137, provides that before any foreign corporation shall transact business in this State, it shall file a certain certificate in a designated office, etc.; and sec. 139 provides that any person acting as agent for a foreign corporation before the provisions of sec. 137 have been complied with, shall pay a certain fine for so acting. Section 140 prescribes that no foreign corporation shall be permitted to maintain any action in the Courts of this State until it shall have complied with the directions contained in section 137. *Held,* that a contract made in this State by a foreign corporation which has not complied with the requirements of section 137 is not illegal or void; but the object of the statute is effected by the imposition of the fine alone.

After the institution of a suit on a contract by a foreign corporation which had not complied with the conditions imposed by said section 137, and before the trial, it complied with the provisions of that section. *Held,* that section 140 does not in terms prohibit the institution of a suit, but only its maintenance, and that the plaintiff, upon complying with those provisions, is entitled to prosecute a suit previously instituted.

Plaintiff issued an attachment against the defendant which was dissolved upon giving bond. More than four months thereafter, proceedings in bankruptcy were instituted against the defendant, under which he obtained a discharge. *Held,* that

this discharge in bankruptcy does not prevent the plaintiff from obtaining a judgment in the attachment suit against the defendant, if the judgment be accompanied with a perpetual stay of execution; the object of such judgment being to allow the plaintiff to proceed against the sureties on the bond given to dissolve the attachment.

The Courts of this State have the power to enter a judgment with a perpetual stay of execution, under Code, Art. 26, sec. 14, which provides that the Court shall give judgment in all actions according as the very right of the cause and matter in law shall appear to them, without regarding any matters of mere form.

When the work provided for by a contract under seal has not been done within the time limited, but has been accepted by the other party to the contract, an action of assumpsit lies to recover its value. Consequently evidence is admissible to show that such work was accepted.

And prayers based upon the theory that the rights of the parties are governed by the original contract under seal are erroneous.

The voucher in an attachment suit may be amended.

*Decided February 10th 1909.*

Appeal form the Superior Court of Baltimore City (EL-LIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.·

*Charles F. Harley* (with whom were *John B. A. Wheltle* and *Hyland P. Stewart* on the brief), for the appellant.

It must be conceded that no binding judgment should have been entered up in this case against the defendant; and the bond under the law is clearly conditioned only upon the failure of the defendant to "satisfy any judgment that shall be recovered in this case against the defendant." That is the sole undertaking in the bond, and this undertaking cannot be

extended by fair judicial construction. No binding or *bona fide* judgment can be recovered in this case against the defendant, in the language of the Act and of the bond, but it is contended that a fictitious judgment with perpetual stay of execution should be entered up against the *defendant* for the sole purpose of binding the surety, relieving the defendant from liability to pay the very judgment its failure to pay which is the *crux* of the condition of the bond. This is a monstrosity which has the sanction of neither the law nor the practice in this State. Indeed, so unknown are such special judgments that they are not mentioned either by Black or Freeman in his work on judgments. No Federal question is involved, except, of course, in the erroneous entering up of an absolute judgment; and we ask the benefit of the law as it is, regardless of consequences. If the existing law is insufficient or unfair from our brother's standpoint, the remedy is with the Legislature, not with the Courts. It is the duty of the Courts *jus dicere, et non jus dare.*

The condition of the bond to dissolve an attachment is: "Now the condition of the above obligation is such, that if the said defendant shall satisfy any judgment that shall be recovered in said case against him, then the said obligation shall be void, else to be and remain in full force." *Hodge & McLane's Law of Attachment* in Md. page 253.

The appellee prevailed below upon the strength of *Hill* v. *Harding,* 107 U. S. 631. An examination of these case shows:

1.—That the State Court refused a stay in a case where the bankruptcy occurred after verdict but before judgment.

2.—That the United States Supreme Court ordered the stay pending the action of the Bankruptcy Court upon the application for a discharge.

3.—That in Illinois, when the bankruptcy occurs after verdict but before judgment, the Courts have a right to refuse to receive the plea of bankruptcy and to enter up the special judgment under the "settled practice" of the Courts of that State upon the verdict already rendered.

4.—That the Federal Courts, when the bankruptcy occurs after verdict but before judgment, after the four months' period, have nothing to do with the refusal of State Courts to receive the plea of discharge in bankruptcy or their entry of special judgments.

It is thus clear that no Federal question is presented in our case further than the erroneous entering up of an absolute judgment; and the following propositions are equally clear from the *Hill-Harding* cases:

1.—The State law governs.

2.—In Illinois after verdict and before judgment the Courts may refuse to receive the plea of discharge in bankruptcy.

3.—In Illinois after verdict and before judgment the Courts, when they refuse to receive the plea of discharge in bankruptcy, may enter up a judgment on the verdict with perpetual stay of execution under the "settled practice" of that State.

Nowhere does it appear that under the same circumstances the Illinois Courts could apply these principles *before verdict* and in cases where the *plea of discharge had been actually received.*

There is no difficulty in distinguishing our case from the *Hill-Harding* series. Indeed, there is no analogy between the two.

1.—The law of Maryland, if there is any, governs; and if there is no law, it is for the Legislature, not the Courts to make it.

2.—No verdict has been rendered in our case.

3.—The Maryland Courts cannot refuse to receive the plea of discharge in bankruptcy. It is a matter of right. 1 *Poe's Pleading,* Sec. 749. Besides, the plea was actually filed by leave of Court.

4.—No such special judgment is sanctioned by the law of Maryland.

When bankruptcy is pleaded it "entitles the defendant to

an *absolute* judgment in his favor." 1 *Poe's Pleading* (4th Edition), sec. 399; 2 *Poe's Practice,* sec. 812, page 961.

The Court of Appeals has said: "The practice of taking a qualified judgment, where the discharge is pleaded, is erroneous; such a plea is a bar to the action, and, if confessed, judgment must be given for the defendant." *Buckey* v. *Cullen,* 18 Md. 418.

.. "Under the plea of discharge in insolvency *no* judgment can be recovered against him." *Becker* v. *Whitehill,* 55 Md. 572.

· There is no authority under the laws of Maryland for the qualified judgment.· Indeed, it seems to be prohibited, whereas our brother must show affirmatively that the law provides for it.

5.—There is no "settled practice" in this State (or, indeed, any other State) authorizing the entry of a special judgment, when discharge is actually pleaded and when the bankruptcy occurs before verdict.

The meaning of the term "settled practice" is too clear for discussion. The question is not what is the practice as to the entering up of a qualified or special judgment in any other class of cases—not whether a judgment with perpetual stay may be entered up under our practice in any case. But what is the settled practice—it is conceded that there is no law in Maryland on the point—as to the entry of a judgment with perpetual stay as to the defendant when discharge is pleaded and when the bankruptcy occurs before verdict.

"Practice consists in frequent or customary actions; a succession of acts of the same kind. *A proceding that never has been taken cannot be said to be in accordance with existing practice.* Practice is the form, manner and order in which proceedings have been and are accustomed to be had." *Fellows* v. *Heermans* (N. Y.), 13 Ab. Prac. (N. S.) 1.

You cannot make common law; you cannot make usage; you cannot make "settled practice." It is something that already exists.

In *Payne* v. *Able,* 7 Bush (Ky.) 344, no verdict had been rendered; the adjudication in bankruptcy had been made after the four months' period *puis darrein continuance;* the plea of discharge had been received, and the Court said in reference thereto: "After the discharge in bankruptcy of the principal in the attachment bonds, no judgment could be rendered against him; and as no judgment could be rendered against him the sureties in the bonds were released from liability thereon by his discharge."

In *Williams* v. *Atkinson,* 36 Texas 16, the same question was passed upon with the following conclusions: "A plea of discharge in bankruptcy is a good plea in bar to an action commenced in our State Courts by attachment, even though the suit by attachment was commenced more than four months previous to the adjudication in bankruptcy."

The undertaking of the bond in this case is to "satisfy any judgment that shall be recovered in this case against the defendant." It was decided in *Bears* v. *Haughton,* 9 Peters, 329: "Discharge under State insolvent laws is a sufficient plea upon suit on a bond that the defendants should pay and satisfy the judgment recovered against them."

It is useless to enlarge upon this. Could a case be more in point?

In *Wolf* v. *Stix,* 99 U. S. 6, the Court says: "The cases are numerous in which it has been held—and, we think, correctly—that, if one is bound as surety for another to pay any judgment that may be rendered in a specified action, if the judgment is defeated by the bankruptcy of the person for whom the obligation is assumed, the surety will be released. The obvious reason is that the event has not happened on which the liability of the surety was made to depend. Of this class of obligations are the ordinary bonds in attachment suits to dissolve an attachment, appeal bonds, and the like."

Of course, by the very terms of the Bankruptcy Acts, a co-debtor, endorser, guarantor or surety for an existing *debt* is not released by the principal's discharge. But there is no surety for a *debt* in this case. The defendant and a surety

have executed a bond—a contract.  The bankruptcy of the principal prevents the happening of the event upon which the surety's liability depends, and it cannot, therefore, become originally liable on the bond.  Is it not quite clear that it is not a question of release, but one of original liability on the bond?  "The liability of the surety on the dissolving bond is not altered by the discharge of the bankrupt defendant, but the discharge prevents the happening of the contingency on which liability depends."  The defendant simply demands adherence to the contract, and why should it not do so?  The plaintiff appeals to "substantial justice," but the substance of its whole demand is that it be given a preference which is abhorred by the Bankruptcy Acts; and this preference is claimed upon a strict, harsh statutory proceeding, because this defendant happened to have been incorporated in Pennsylvania, and not in Maryland.

This defendant has a right under the Bankruptcy Acts (Sec. 17) to a release from this debt and no qualification of any judgment in this case *can relieve it from its obligation to the surety if it is held.*

The defendant has a right to ask for a strict legal construction in this case, because the surety would have an action over against it in case the bond is liable, and its bankruptcy, intended to relieve it of all its obligations, would not be operative against this debt not provable at the time.  The defendant has a right to the law's protection in this respect.

"A surety on a statutory bond has a right to stand on the very terms of his contract, and his liability cannot be extended beyond the first import of the words used."  *Furness* v. *Read,* 63 Md. 1; *Englar* v. *Insurance Co.,* 46 Md. 323.

Is there any logic in the effort to enter up a judgment against us and then say to us by the stay that we are under no legal obligation to pay it, although our failure to pay is a condition precedent to the right to sue on the bond?  This is an odd species of discharge.  Can anything lawful be predicated upon such a subterfuge?

The plea of discharge is an absolute bar to the debt as to us. A judgment is entered up which we do not have to pay. Upon our failure to pay a judgment which we are under no legal obligation to pay suit can be brought against our surety. Although the Bankruptcy Acts provide for our discharge, our failure to do something which it is not our duty to do, creates a right to sue our surety which would then be able to hold us for the amount which it had to pay—as the debt was not provable at the time of our adjudication, even as a contingent liability, since the right of action did not accrue till we failed to do the something which the immutable ( ?) figure of Justice turned around again and told us it was not our duty to do.

"If the sureties should ultimately pay the amount of any such judgment, and thereby acquire a claim to be reimbursed by their principal the amount so paid (which is a point not now in issue), it would be because his liability to them upon such a claim did not exist at the time of the commencement of the proceedings in bankruptcy, and therefore could not be proved in bankruptcy nor barred by the discharge, and consequently would not be affected by any provision of the Bankrupt Act." *Hill* v. *Harding,* 130 U. S. 699; *Wolf* v. *Stix,* 99 U. S. 1; *Paul* v. *Jones,* 1 T. R. 599.

If the defendant had been a resident of Maryland and a surety had agreed under seal to pay any judgment recovered against us, it could not be contended that now after our bankruptcy, judgment could be entered up against us just to catch the bond. Surely all resident and non-resident debtors and creditors should stand on the same basis. Why discriminate against the defendant because it is a non-resident? (*Mason* v. *Union Mills Co.,* 81 Md. 446). If the surety could sue the defendant on such a fictitious judgment, it would be unjust to us, because we have given up everything and prayed the benefit of the Bankruptcy Act. If the surety could not sue us by reason of our bankruptcy, it would be very unjust to the surety. Besides, the bond speaks for itself. It is the contract entered into between us, and it was not in the con-

templation of the parties either that the surety should be held when no judgment could be recovered against us, or that we should be liable over to the surety after our bankruptcy.

In *Carpenter* v. *Turrell,* 100 Mass. 450, the Court said: "If the debtor obtains his discharge and this is pleaded, as no final judgment can be rendered against him the bond given will, indeed, be discharged by the determination of the contingency upon which it is made to depend." See also *Hamilton* v. *Bryant,* 114 Mass. 543, where in a case like the present, it was held: "Where a defendant has been discharged in bankruptcy a special judgment cannot be entered against him to enable the plaintiff to avail himself of a bond given to discharge an attachment in the suit." *Braley* v. *Boomer,* 116 Mass. 527.

This is simply a short note case; the attachment case has been dissolved and disposed of by the filing of the bond; this is not an action on the bond. It is no time even to consider the condition of that bond, which is to take effect upon the failure of the defendant "to satisfy any judgment which may be recovered against the defendant" in this short note case. The sole question is whether or not the replication is good in the case now actually before this Court. It is not for us to consider whether it is a "hard case;" it is not for us to determine whether the law is good or bad; it is not for us to attempt to reach out and drag in a third party because our individual ideas of substantial justice might suggest it; it is for us to say what the law is, and if there is no law to support the affirmative allegations of the plaintiff's replication, can we not properly ask the Court to say so?

A short not case, like any other suit in assumpsit, is before this Court; a plea of discharge in bankruptcy has been filed, and the plaintiff has replied that the attachment was over four months old when the petition was filed and that he is entitled to prosecute the suit to judgment against the defendant.

It is admitted that no absolute *bona fide* judgment can be recovered against the defendant, and the Court is asked to reach out and enter a fictitious judgment so as to hold the bond in another anticipated case not now before the Court.

Upon what authority can such a procedure, unprecedented as it is, be based? Not in the *Hill-Harding* series. In that case a verdict had been rendered; the plea of discharge in bankruptcy was *not* filed and the Federal Court merely ruled that the Bankruptcy Act dealt only with cases occurring within the four months' period, and that there was nothing in the Act against the procedure in Illinois. That is not our case. No verdict has been rendered here. The plea of discharge has been filed in our case.

The next point raised by this appeal is whether or not the failure of a foreign corporation to comply with the provisions of the Act of 1898, Chapter 270, can be corrected after a suit is brought, by compliance with the Statute, so as to give a retrospective operation to its tardy and enforced obedience to the Statute.

In those jurisdictions which take the view that such contracts are not *invalid,* but merely *unenforceable* by the foreign company before its compliance with the law it is frankly admitted there is a difference of opinion as to the effect of complying *after* the suit is brought. It is submitted that the best considered cases hold that the reason, spirit and purpose of statutes similar to ours are to close the doors of our Courts to foreign companies which refuse to comply with our laws. A submission to our laws is a condition precedent to the right to use our Courts. Obey the laws first; then sue. If a violator of a law of this kind is permitted to *enter suit,* where is the *locus pœnitentiæ?* Is it to be permitted to hold off its compliance with the law till verdict, till judgment—till it is assured of success, No; it has no standing in Court; the Courts will not recognize an offending corporation. If a suit has been prematurely brought, it must be dismissed and another instituted with clean hands. Compliance by a foreign

corporation with the law after the commencement of an action thereon will not remove the bar of the statute, which closes the doors of the Courts of the State to such companies doing business in the State in defiance of its laws.   *Brewing Co.* v. *Peimeisl,* 85 Minn. 121; *Ginn* v. *Mortgage Co.,* 92 Ala. 135; *Halsey* v. *Henry Jewett Co.* 114 App. Div. 420; *Kinney* v. *Reid Co.,* 57 App. Div. 206.

These cases are decided upon statutes, like ours, prohibiting the *maintenance* of suits in such cases.   But why should we discuss this phase of the case when the Courts uniformly hold that, if the contract is invalid when made, nothing can cure it?   It is contended that this contract made in Maryland in defiance of her laws is absolutely void in this *forum.*

In *Stevens* v. *Rasin Fertilizer. Co.,* 87 Md. 679, it was decided—indeed, it was admitted—that a contract of insurance by a foreign company which had not complied with the law was absolutely void.

Does our case come within the purview of the real estate brokers' cases, looking to the securing of a license and the consequent revenue, or does it fall within *Stevens* v. *Rasin Fertilizer Company, supra?*   Clearly the latter.   The cases of the real estate brokers' class have for their object revenue. The sections adjudicated in *Stevens* v. *Rasin Fertilizer Company* and the sections now before the Court have for their object the subjection of foreign companies to the jurisdiction, process and supervision of our Courts—to furnish for the benefit of citizens and complying corporations a means of identification and investigation of Brown, Jones and Smith corporations.

The contract is, therefore, in this *forum* void, notwithstanding the provision of a penalty, and this Court has the support of the following authorities in its conclusions in the interpretation of similar statutes *containing provisions as to penalties*:   *Tri-State Amusement Co.* v. *Forest Park Highland Amusement Co.,* 192 Mo. 404; *American Copying Co.* v. *Bazaar,* 108 N. W.; 15; *American Ins. Co.* v. *Story,* 41 Mich. 385, 24 L. R. A. 315, 316, 317 (Note); *Dudley* v. *Collier,*

87 Ala. 431; *Farrior* v. *New Eng. Mtg. Co.,* 88 Ala. 275; *Christian* v. *American Co.,* 89 Ala. 198; *Boulden* v. *Estey Organ Co.,* 92 Ala. 182; *Cincinnati Co.* v. *Rosenthal,* 55 Ill. 85; *Thorne* v. *Travelers' Ins. Co.* 80 Penna. 1; *Franklin Ins. Co.* v. *Packet Co.,* 9 Bush. 590; *McCanna* v. *Citizens' Trust and Surety Co.,* 24 C. C. A. 11; *Aetna Ins. Co.* v. *Harvey,* 11 Wisc. 394; *Webb* v. *Alexander,* 7 Wend. 281; *Allegheny Co.* v. *Aiken,* 69 N. J. L. 270.

In the note to 24 *L. R. A.* 315, the decisions *pro* and *con* are collected, and the great weight of authority and reason is shown to be in favor of our contention.

Only four cases to the contrary are collected at page 317 of this note, and the leading one of those four, a Missouri case, has been overruled in 192 Mo. 404.

In the second and fourth bills of exception the questions objected to and the answers were as follows:

"Q. State whether or not that work done by the plaintiff on this Johns Hopkins warehouse, under these plans and specifications, has been accepted and enjoyed by the people for whom you did it?"

"A. Yes, sir."

"Q. Do you know whether or not the defendant accepted and enjoyed the work thus done under this contract and these plans and specifications?"

"A. I do."

Is a witness to be permitted to say what is an *acceptance* in a case of this character? Is it not rather his province to state facts, in order that the jury, under the Court's direction, may be able to say whether or not there has been an *acceptance?*

Is he to be allowed in one word to clarify a question that has puzzled judicial minds for centuries; viz., what constitutes an acceptance of property built upon land which does not belong to the contractor? *Pope* v. *King,* 108 Md. 37.

Indeed, in this case, the witness cut the Gordian Knot in a manner different from that used in the leading case of *Cutter* v. *Powell,* 2 Smith's Leading Cases 1, and overruled the

opinion of the distinguished judge who sat in that case. Throughout the record, he states facts absolutely at variance with his legal conclusion as set forth in his answers to these questions. See 2 *Smith's Leading Cases,* 31 and 32. If a witnesss is to be allowed to testify as to the law, it will be very awkward to permit him to give evidence as to bad law.

We may refer to *Kennedy* v. *Cumberland,* 65 Md. 514, and *Pentz* v. *Fire Ins. Co.,* 92 Md. 444.

The two cases deal respectively with questions of *acceptance* and *waiver.* The former case holds that it is for the Court to determine what facts constitute an acceptance and for the jury to say from the evidence whether or not such facts exist.

The deferred payments, not being due at the time of the institution of this suit, cannot be recovered in this action. The plaintiff is not entitled to the 30 per cent. in any instance till the time mentioned in the respective contracts arrives, namely, thirty days after the completion of the entire building; and this suit was brought confessedly before that time. It may be entitled to this payment, but not till after it is due. The plaintiff claims to have finished its own branch of the work under its contracts about November 1; the suit was field November 4; and the entire building was not completed till some time later. The plaintiff's contention is that, if the contracts are to be treated as broken, the claim for the 30 per cent. deferred payment can be made at this time; but, if the contracts had been executed in every particular, the demand for the 30 per cent. cannot be made. A premium is thus placed on breaking a contract and dragging it one day over time.

The date of the writ is the test; and subsequent suits must be brought on any causes of action or any installments thereof maturing thereafter. It is not sufficient that such inchoate causes of action may become due pending the suit thus prematurely brought. *Hamlin* v. *Race,* 78 Ill. 422; *Blevins* v. *Alexander,* 36 Tenn. 583; *Metcalf* v. *Guthrie,* 94 N. C. 447; *Stein* v. *Burden,* 24 Ala. 130; *Stanley* v. *Turner,* 68 Vt. 315;

*Toledo* v. *Arnold,* 49 Ills. 178; *Nickerson* v. *Babcock,* 29 Ills. 497; *Wooley* v. *Jones,* 55 Ga. 329; *Tappan* v. *Tappan,* 30 N. H. 50; *Wattson* v. *Thibou,* 17 Abbott's Practice, 184.

The prayers which were refused deal minutely and specifically with the same point, segregating the amounts and separating the two contracts, one having a time limit, and the other having none, and both dealing with the subject of delays.

*Thomas G. Hayes,* for appellee.

The appellant in both of these cases employed the appellee, under sub-contracts in writing and under seal, to do certain work of construction on the warehouses of the trustees of the Johns Hopkins Hospital and the Resonol Chemical Company, which the appellant had contracted to build. The appellee did the work under both sub-contracts as prescribed in the plans and specifications; *but not within the time prescribed in said sub-contracts.* The appellant after the time limit of said sub-contracts had expired, accepted the work done by the appellee, and enjoyed the benefit of same. The suits in these cases were not in covenant on the sub-contracts, but in *assumpit* and sought to recover the reasonable value of the work so done and accepted.

The appellee was a foreign corporation with its principal office in Boston. The suits were attachments against the appellant, also a foreign corporation of Philadelphia, as a non-resident, to recover the reasonable value of the work done by the appellee in conformity with the plans and specifications of said sub-contracts, and was laid in the hands of the trustees of Johns Hopkins Hospital and the Resonol Chemical Company, and upon a confession of assets by these two garnishees, the appellant dissolved the attachments by giving bond. These suits are on the short notes which had only the six common money counts in each declaration.

The appellee failed to comply with the Maryland law relating to foreign corporations doing business in Maryland, Art. 23, secs. 137 to 141 of the Code of Public General Laws,

before the institution of the suits, but did so comply about two months after suits were brought. The appellant was declared a bankrupt by the United States District Court of Pennsylvania, and had been discharged by that Court after the institution· of the suits and before the recovery of the judgment in the lower Court in the short note cases. The suits and cause of action were more than four months before bankruptcy.

I. The appellant contends by its demurrer to one of the appellee's replications which averred that while it did not comply with the Maryland law relating to foreign corporations doing business in Maryland, before the institution of the suit, it did comply with said law on January 10, 1905, a short while after the institution of said suits and before the trial and judgment in these cases, and the appellant claims that this non-compliance with said law by the appellee before suit was instituted, made said contract in its entirety, illegal and null and void, and non-enforceable, and that if this contention is not maintainable, then under the express provision of said law as contained in section 140: "No such foreign corporation shall be permitted to *maintain* either at law or in equity in the Courts of this State, until the provisions of section 137 shall have been complied with," and that "maintain" used in this section, means institute, and the appellee not having complied with section 137 of said law before the institution of said suits, the appellee is out of Court and its suits must be dismissed. The appellee's answer to this twofold contention of appellant, is as follows:

1. The Maryland law in question in section 139 prescribed the only penalty for the failure of a foreign corporation to comply with said law, a fine "of one hundred dollars for each and every day he may act as such agent or employee, or may occupy such office for the transaction of such business." There is no word in the law which declares that contracts made before the law is complied with, shall be illegal, null and void, nor is any penalty imposed against the corporation, but is

solely as above against its agent, employee or officer, who violates said law.

It has been repeatedly decided by some of the first Courts of this country, that such laws relating to foreign corporations doing business in the States, which, as does the Maryland, impose only a penalty, is the only and exclusive punishment intended by the Legislature to be imposed on foreign corporations, and that a failure to comply with such laws does not invalidate or render illegal, null and void contracts made before said compliance. Some of the Courts which have so decided, are: *Fritts* v. *Palmer,* 132 U. S. 289 ; *Bank* v. *Page,* 6 Or. 431, 436 ; *Edison G. E. Co.* v. *Canadian Co.,* 8 Wash. 370, 24 L. R. A. 319 ; *Toledo Co. v. Thomas,* 33 W. Va. 566, 11 S. E. 37 ; *Insurance Co.* v. *Brinkley Co.,* 61 Ark. 1, 29 L. R. A. 712, 714 ; *Garrett Ford Co.* v. *Vt. Mfg. Co.,* 20 R. I. 187, 38 L. R. A. 545, 546 ; *Dearborn F. Co.* v. *Augustine,* 5 Wash. 67 ; *Columbus Ins. Co.* v. *Walsh,* 18 Mo. 229 ; *Clark* v. *Middleton,* 19 Mo. 53. This Court virtually decided the same thing, when it held that a failure of a real estate broker to comply with the Maryland law as to taking out a license, did not make illegal and null and void a contract for commission for making a sale of real estate. "When statutory conditions are imposed on the conduct of the business, agreements made without observing these conditions, if no stigma of wrong is attached to the specific transaction, and it appears the condition was imposed for merely administrative purposes   *   *   *   it will not be held invalid." *Walker* v. *Baldwin,* 103 Md. 355.

There is still another reason why the failure to comply with the Maryland law as to foreign corporations, does not render available to the appellant the defense of illegality of such sub-contracts, and that reason is: That the Legislature of Maryland by the Act of 1908, Chapter 240, repealed the law under which this contention is made and provided in the re-enacted section that: "Such failure shall not affect the validity of any contract made with such non-complying corporation."

Although it is true that this repealing law was enacted since the sub-contracts were entered into and the work done under the plans and specifications of such sub-contracts, as well as since the judgments below, yet the force and effect of such repeal in this Court in rendering its decision in these cases, is fully set forth in *C. & O. Canal Co.* v. *W. Md. R. Co.*, 99 Md. 575.

2. The second contention of the appellant is that the word *"maintains"* occurring in section 140 of the Act in question means *"institute"* and as the appellee had not complied with the law when the suits were instituted, the suit must abate. This meaning of the word "maintain" contended for by the appellant is not supported by the authorities. A Standard law dictionary, thus defines the meaning of the word maintain: "In pleading to support what has already been brought into existence." *Anderson's Law Dic.*, 646. The Supreme Court of Missouri and the U. S. Circuit Court of Appeals of the Fourth Circuit and the Supreme Court of Appeals of West Virginia in similar laws relating to foreign corporations doing business in the States, have adopted, approved and followed the meaning of the word *"maintain"* when used in the same connection as given by Mr. Anderson in the above quotation. *Carson-Rand Co.* v. *Stern,* 129 Mo. 381, 32 L. R. A. 420, 421; *Witzel R. Co.* v. *Tennis Bro. Co.,* 75 C. C. A. 275; *Toledo R. Co.* v. *Thomas, supra.*

II. The bringing of the suits in *assumpsit* and not in covenant on the sub-contract was proper, because the breach of the sub-contracts by the appellee in failing to complete the sub-contracts within the time prescribed, put an end to the sub-contracts and all the covenants, conditions and stipulations, and they could not form a cause of action for the work done and accepted. When after such breach, the appellant permitted the appellee to finish said work, accepted it and enjoyed the benefits of said work, the appellant waived the breach and the law implied a promise to pay the appellee the reasonable value of the work. The cause of action in these suits was this *implied promise,* not covenants or conditions

of the sub-contracts in writing and under seal. These sub-contracts were entirely out of the case and the liability of the appellant to the appellee was in *assumpsit* for the reasonable value of the work so accepted and benefits enjoyed. *Watchman* v. *Crook,* 5 G. & J. 263; *Orem* v. *Keelty,* 85 Md. 344; *Coates* v. *Sangston,* 5 Md. 133; *Pres. Church* v. *Hooper,* 66 Md. 603; *Walsh* v. *Jenvey,* 85 Md. 244; *North Bros.* v. *Mallory,* 94 Md. 317; *Fairfax* v. *Chambers,* 75 Md. 611; *Filston Farm* v. *Henderson,* 106 Md. 372.

III. Another exception of the appellant is to the question asked the witness Cross by the appellee, which was that: "If after the time limit prescribed in the sub-contracts had expired, the appellant *'accepted and enjoyed'* the work done by the appellee?" The use of the word *"accepted"* in the question is objected to and exception reserved. This word is an ordinary word, with its meaning known to everybody, and nothing whatever technical about it. It was obligatory on the appellee to prove that after the breach of the sub-contracts as to the time limit, that the work was done by it and *"accepted"* by the appellant. *Orem* v. *Keelty,* 85 Md. 344; *Watchman* v. *Crook,* 5 G. & J. 263. This very word was used in a question, in a recent case of this Court relating to the Statute of Frauds, and was approved by this Court. *Jarrell* v. *Young,* 105 Md. 281. The appellant was in no manner prejudiced by the form of the question in which the word *"accepted"* was incorporated. *Hackett* v. *Webster,* 97 Md. 406.

IV. The learned lower Court had by express decisions of this Court, the right to grant leave to the appellee to amend the *voucher* filed with the attachment proceeding. The error in the voucher being the credit of a specified amount which it was asked might be stricken out. This was a matter in the discretion of the Court and in no manner prejudicial to the appellant. *Blair* v. *Winston,* 84 Md. 361; *Booth* v. *Callahan,* 97 Md. 318.

V. The appellant vigorously insisted that error was committed by the learned lower Court in permitting the appellee

to obtain against the appellant a qualified judgment with perpetual stay of execution, solely for the purpose of holding the surety on the attachment bond.    This objection is founded upon the fact that after the institution of these suits and before trial and judgment, the appellant by the U. S. District Court of Pennsylvania, had been declared and discharged as a bankrupt under the U. S. bankrupt law. It was conceded that the cause of action in said cases arose four months before the institution of the suits. This whole question has been fully and exhaustively considered and decided by the Supreme Court of the United States in the case of *Hill* v. *Harding,* 130 U. S. 702.    This decision on this exact question expressly decides that such a qualified judgment for the purposes aforesaid, may be taken against a discharged bankrupt.    The same principle is stated and affirmed in *Wolf* v. *Stix,* 99 U. S. 9; *Metcalf* v. *Barker,* 187 U: S. 74; *Black on Bankruptcy,* 94.

There is express authority for such a qualified judgment under the Maryland law as follows: "The Court shall give judgment in all cases according to the very right of the cause and matter in law shall appear to them without regarding any matters of mere form." *Code,* Art. 26, sec. 14.

VI. The learned lower Court was absolutely right in rejecting all ten prayers of the appellant for the simple and apparent reason that they were all based on the sub-contracts which were not the cause of action in the suits.    The suit was in assumpsit and not in covenant for the reason of the breach of said sub-contracts by the appellee as to the time limit, and hence said sub-contracts could not be the basis or foundation of any instruction to the jury, as they were entirely out of the case.

VII. In one of the cases there is a motion to dismiss the appeal.    The legal question on the merits. in this case are identical with the legal questions in the other case.    The appeal in this case is solely to the action of the learned lower Court on the rulings on demurrer, which is exactly the same as the action of the Court on the demurrer in the other case.

There was no bill of exceptions or petition in the nature of a writ of error, as prescribed and required by rule one of this Court.   The Maryland Cases relied on to sustain this contention are: *Averitt* v. *State,* 76 Md. 516; *McCaddin* v. *State,* 100 Md. 669.

It is true that Code, Art. 5, sec. 2, provides, "from any judgment or determination of any Court of law in any suit or actions   *   *   *   any party may appeal to the Court of Appeals."   But the method of appeal provided by Rule 1, when there is no bill of exceptions, is by a petition in the nature of a writ of error.   This method is not followed in this appeal.

It is true that this Court in *Lawson* v. *Snyder,* 1 Md. 77; *Tucker* v. *State,* 11 Md. 329; *Lee* v. *Rutledge,* 51 Md. 318; *State* v. *Floto,* 81 Md. 602; *State* v. *Mercer,* 101 Md. 537, has passed on this question.   But in many of these cases there were bills of exceptions.  The question is whether Rule 1 requires a writ of error when the error complained of is solely to the overruling or sustaining a demurrer, or is there an election or choice with the appellant to take an appeal from the final judgment instead of a writ of error.  If the former, then the whole record is open to the Court, and the motion to dismiss the appeal should be overruled; but if Rule 1 is mandatory requiring a writ of error when there are no exceptions, then the appeal should be dismissed.

Briscoe, J., delivered the opinion of the Court.

On the 2nd of November, 1904, the appellee, a West Virginia corporation, sued out a non-resident attachment against the appellant, a Pennsylvania corporation.  The attachment was laid in the hands of the trustees of the Johns Hopkins Hospital and sufficient funds were attached to cover the appellee's claim.  Subsequently, the appellant gave bond, and the attachment was dissolved.

The declaration in the short note case, is in assumpsit and contains the six money counts.

The verdict and judgment after trial in the short note case, was in favor of the plaintiff and the defendant has appealed.

At the trial of the case, the appellant reserved seven bills of exception. Five of these relate to the rulings of the Court, upon the admissibility of testimony, one to the action of the Court in permitting an amendment to the plaintiff's voucher filed in the case and the seventh, to the refusal of the Court to grant the appellant's prayers.

The principal questions in the case arise upon the rulings of the Court on the pleadings, and we find it more convenient to consider them here.

The amended declaration, it will be seen, contains six counts, and to this the defendant pleaded five pleas.

The fourth and fifth pleas are those chiefly relied upon by the defendant corporation as a bar to the action, and they are as follows:

*Fourth Plea.*—And for a fourth plea the defendant says, that the plaintiff is a foreign corporation, and at the time of the institution of this suit in this Court, the said foreign corporation had not filed in the office of the Secretary of the State of Maryland, accompanied by a deposit fee of twenty-five dollars ($25), a duly certified copy of the charter, certificate or act of incorporation, under which it claimed the power to transact business as a corporation, together with a sworn statement from the president or other chief executive officer of such corporation, under its official seal, setting forth the amount of its capital stock authorized by law, and the amount actually issued, the amount of its assets and liabilities, the character of the business to be transacted in this State, designating the place or places of its principal office or offices, and the name or names of its agent or agents to reside in this State, with the place or places of their residence, upon whom legal process issued out of any Court of this State may, at any time, be served in any action, at the suit of the State of Maryland or of any county or incorporated city or town of this State, or of any citizen or citizens of this State, or of any corporation organized under the laws of this State.

*Fifth Plea.*—That on or about the 13th day of September, 1905, the defendant was by the District Court of the United States for the Eastern District of Pennsylvania, at a session thereof held at the City of Philadelphia, in the said district, on the day and year aforesaid, regularly declared and decreed and adjudicated a bankrupt according to the true intent and meaning of the laws of the United States; and the defendant says that the said supposed indebtedness alleged in the declaration, if any such ever did accrue, accrued before the defendant so became a bankrupt as aforesaid, and was provable under said banckruptcy against the said defendant; and that the said plaintiff was duly and legally notified of said proceedings in bankruptcy, and the said alleged claim was duly scheduled by this defendant in its list of debts in said proceedings; and that on or about the 14th day of February, 1906, at the City of Philadelphia, in said district, the said defendant was by the order and decree of the said District Court of the United States for the Eastern District of Pennsylvania duly discharged of and from all debts owing by it and provable under said bankruptcy, among which debts was the one named and counted upon in the plaintiff's said declaration; all of which by the files and records of said District Court, true and attested copies of which are here ready in Court to be shown, will more fully appear; and the said District Court, at the time and place last aforesaid, further ordered that the said defendant be allowed its certificate of discharge as aforesaid, which said certificate was duly issued to the said defendant; and it brings the same into Court here, duly executed and certified; by all of which the said supposed indebtedness in the said declaration alleged, if any such there be, became and was and now is wholly discharged; and this the defendant is ready to verify.

To the fourth plea the plaintiff replied by way of replication:

That on January 10, 1905, the plaintiff fully complied with all the requirements of the law of the State of Maryland relating to foreign corporations and known as the Act of

1898, Chapter 270, and which requirements of said Act are set out in the averments of said fourth plea. And the plaintiff hereby tenders itself ready to bring into Court and show the Court the certificate of the Secretary of State of the State of Maryland, duly executed and attested, which shows said compliance by the plaintiff with said Act of 1898, Chapter 270, on said date.

And for a replication to the fifth plea, the plaintiff says:

That the adjudication of the defendant a bankrupt and its discharge in bankruptcy by order or decree of the United States District Court for the District of Pennsylvania, does not release or discharge the security on the bond filed in this case by the defendant to dissolve the attachment which had been previously issued and levied by the plaintiff on the moneys and credits of the defendant, which bond had been executed and filed in said case more than four months before the filing in said District Court of the defendant's petition to be adjudged a bankrupt. That the judgment sought to be obtained in this case against the defendant is solely and exclusively to bind the security in said bond filed to dissolve the attachment issued and levied on the moneys and credits of the defendant as aforesaid, and if a judgment is had in this case against the defendant, the Court will be asked by the plaintiff by its order to restrain the plaintiff from ever issuing an execution on said judgment against the defendant.

To the plaintiff's replications to these pleas, the defendant demurred, and upon the overruling of the demurrer, filed a rejoinder to the fourth plea, to the effect that the plaintiff had not complied with the requirements of the statute at the time of the institution of this suit. A demurrer to this rejoinder to the replication to the fourth plea was sustained, and a judgment was entered in favor of the plaintiff thereon, and the defendant failing to rejoin to the fifth replication a judgment was also entered for the plaintiff on the demurrer to this replication.

The questions raised by the fourth plea involves a construc-

tion of sections 139 and 140 of Art. 23 of the Code of Public General Laws, (1904).

By section 139, it is provided: "Any person or any officer of such corporation who shall presume to act ·as agent or employee of any such foreign corporation, or to open or continue an office for the transaction of the business of any such foreign corporation, before the provisions of section 137 have been fully complied with, and before said corporation shall have procured the aforesaid certificate from the Secretary of State, shall forfeit and pay to the State of Maryland the sum of one hundred dollars for each and every day he may act as such agent or employee, or may occupy such office for the transaction of such business, and it shall be the duty of the State's Attorney for the city or county in which such business is transacted, or is proposed to be transacted, to prosecute for and recover such penalty."

Section 140, provides: No such foreign corporation shall be permitted to maintain any action, either at law or equity, in the Courts of this Statte, until the provisions of section 137, shall have been complied with.

It is quite clear, we think, the Legislature did not intend that a violation of the statute should operate to destroy or avoid contracts made by foreign corporations before they complied with the law, but imposed a penalty by way of fine upon its agents or officers, who transacted business before they complied therewith.

In *Walker* v. *Baldwin,* 103 Md. 356, this Court, adopted the rule stated in 1 *Wharton on Contracts,* sec. 364, where it is said: "When statutory conditions are imposed on the conduct of the business, agreements made without observing these conditions, if no stigma of wrong is attached to the specific transaction and if it appears that the condition was imposed for merely administrative purposes, viz., the convenient collection of the revenue, it will not be held invalid." *Banks* v. *McCosker,* 82 Md. 518; *Coates* v. *Locust Point Co.,* 102 Md. 291.

The Supreme Court of the United States in *Fritts* v. *Pal-*

*mer,* 132 U. S. 289, in dealing with a somewhat similar statute, held: "The fair implication is that, in the judgment of the Legislature, the penalty was ample to effect the object of the statute prescribing the terms upon which foreign corporations might do business in the State. If the Legislature had intended to declare that no title should pass under a conveyance to a foreign corporation purchasing real estate before it acquires the right to engage in business in the State and that such a conveyance should be an absolute nullity between the grantor and grantee, leaving the grantor to deal with the property as if he had never sold it, that intention would have been clearly manifested."

The decisions of many of the Courts of the States are in harmony with this construction of the statute. *Bank* v. *Page,* 6 Oregon, 431; *Edison G. E. Co.* v. *Canadian Co.,* 8 Wash. 370; *Toledo Co.* v. *Thomas,* 33 W. Va. 566; *Insurance Co.* v. *Brinkley,* 61 Ark. 1; *Garratt Ford Co.* v. *Vermont Co.,* 20 R. I. 187.

This question, however, has been set at rest, in our State, by sec. 69, ch. 240, of the Acts of 1908, which repeals sections 139 and 140, of Art. 23 of the Code, and provides, "every officer of any such foreign corporation which fails to comply with the provision of the preceding section and every agent of such non-complying corporation who transacts business for it in this State, shall be guilty of a misdemeanor and liable to a fine of two hundred dollars. Such failure shall not affect the validty of any contract made with such non-complying corporation, but no suit shall be maintained in any of the Courts of this State, by any such corporation until it has complied with the requirements of this article."

Nor do we think that by a proper construction of the 140th section, above cited, the plaintiff was prohibited from prosecuting and maintaining the suit, after a compliance with the Act, on January 10, 1905, two months after the institution of the suit.

The language of the statute, is, no such foreign corporation shall be permitted to *maintain* any action either at law

or equity in the Courts of this State, until the provisions of section 137, shall have been complied with.

The statute does not forbid the institution or bringing of the action but prevents the maintaining of such action until the provisions of the law shall have been complied with. The meaning of the word maintain has been defined: "in pleading, to support what has already been brought into existence."

In *Wetzel & T. Ry. Co.* v. *Tennis Bros. Co.,* 75 C. C. A., 266, in passing upon a similar question the Court said: "The right of the plaintiff to maintain this suit is seriously controverted, because of its failure to qualify under the laws of the State of West Va. as a corporation to do business in that State. It is admitted at the time of performing the work, taking out the mechanics' liens and the institution of the suit, the corporation had not conformed to the law in this respect and that prior to the determination of and entry of the final decree, it had so qualified. We think, it is quite apparent that this omission on the part of the plaintiff does not operate to end a suit otherwise regularly instituted or to destroy a right in other respects validly existing, and the greatest effect so far as the Federal Courts are concerned, would be to suspend the prosecution of such suit until compliance was had with statute."

The cases of *Toledo T. & L. Co.* v. *Thomas,* 33 W. Virginia, 571; *Carson-Rand Co.* v. *Stern,* 129 Mo. 381, are to the same effect.

The doctrine announced in these cases seem to us to be reasonable and correct, and is approved.

There was no error in overruling the defendant's demurrer to the plaintiff's replication to the fifth plea, herein set out. In *Hill* v. *Harding,* 130 U. S. 702, the precise question here involved, was presented and the decision in that case, is conclusive, of the correctness of the Court's ruling in this case. JUSTICE GRAY, in delivering the opinion of the Court, said: "The question not then passed upon, and now presented, is whether, since he has obtained his discharge in bankruptcy, there is anything in the provisions of the Bankrupt Act to

prevent the State Court from rendering judgment on the verdict against him, with a perpetual stay of execution, so as to prevent the plaintiffs from enforcing the judgment against him, and leave them at liberty to proceed against the sureties in the bond or recognizance given to dissolve the attachment, made more than four months before the commencement of the proceedings in bankruptcy. Such attachments being recognized as valid by the Bankrupt Act (*Rev. Stat.,* sec. 5044), a discharge in bankruptcy does not prevent the attaching creditors from taking judgment against the debtor in such limited form as may enable them to reap the benefit of their attachment. * * * The judgment is not against the person or property of the bankrupt, and has no other effect than to enable the plaintiff to charge the sureties, in accordance with the express terms of the contract, and with the spirit of that provision of the Bankrupt Act which declares that 'no discharge shall relieve, discharge or affect any person liable for the same debt, or with the bankrupt, either as partner, joint contractor, indorser, surety or otherwise.' If the bond was executed before the commencement of proceedings in bankruptcy, the discharge of the bankrupt protects him from liability to the obligees; so that, in an action on the bond against him 'and his sureties, any judgment recovered by the plaintiffs must be accompanied with a perpetual stay of execution against him; but his discharge does not prevent that judgment from being rendered generally against them." *Wolf* v. *Stix,* 99 U. S. 1; *Metcalf* v. *Barker,* 187 U. S. 165; *Black on Bankruptcy,* 94.

But it is earnestly insisted, upon the part of the appellant, there is no such practice in this State, as to warrant a special or qualified judgment, to wit, a judgment with a perpetual stay of execution and the Courts are without power to so render them.

We are unable to agree with this contention. A sufficient warrant, we think, can be found in sec. 14 of Article 26, of the Code of Public General Laws (1904), wherein it is provided, the Court shall give judgment in all actions accord-

ing as the very right of the cause and matter in law shall appear to them, without regarding any matters of mere form, so as sufficient matter shall appear in the proceedings, upon which the Court shall proceed to give judgment, and it shall appear that the action has been commenced after the cause thereof did accrue.

When it appears a good and sufficient reason exists for a qualified judgment, as in this case, such a judgment can be rendered. 2 *Evan's Harris,* 345, 364; *Peck* v. *Jenness,* 48 U. S. 612; *Dor* v. *Childress,* 88 U. S. 642; *Hill* v. *Harding, supra.*

Finding no error in the rulings upon the pleadings, we come now, to the objections, raised on the exceptions.

The first, third and sixth exceptions, are abandoned by the appellant in his brief and will not be considered.

The second and fourth exceptions present the identical questions, and will be considered together.

The witness Cross, was asked the following question: State, whether or not that work was done by the plaintiff on the Johns Hopkins warehouse under these plans and specifications has been accepted and enjoyed by the people for whom you did it. An objection by the defendant to the propounding of this question was overruled by the Court, and the witness permitted to answer, "Yes, sir." There was no valid reason for excluding this evidence. The suit here was properly brought in assumpsit and not in covenant, because the work covenanted to be done, was not finished and completed within the specified time, and it was entirely competent for the plaintiff to show, that the work when done was accepted and its benefits enjoyed by the defendant. *Watchman* v. *Crook,* 5 H. & J. 240; *Orem* v. *Keelty,* 85 Md. 345; *Hackett* v. *Webster,* 97 Md. 406; *Jarrell* v. *Young,* 105 Md. 281.

The fifth exception, relates to the action of the Court, in granting leave to the plaintiff to amend the voucher filed with the attachment by striking out of the voucher an item of $1,378.86, and permitting the plaintiff to show that there was due and unpaid certain sums for work done and accepted

by the defendants. The Code, Art. 9, sec. 28, expressly provides, that the affidavit, short note, declaration, voucher, pleadings, etc., etc., and all other papers in attachment proceedings may be amended in the same manner and to the same extent as the proceedings in any other suits or actions at law, etc. *Blair* v. *Winston,* 84 Md. 361; *Booth* v. *Callahan,* 97 Md. 318.

The suit was not on the contracts but in assumpsit, and the evidence was admissible for the purpose of showing the correct amount due by the defendants to the plaintiffs. In *Orem* v. *Keelty, supra,* it was distinctly said, by permitting the plaintiffs after knowing the work was not completed in time, to proceed and finish it, he waived all right to object on that ground, and the law implies a promise on his part to pay what the labor was reasonably worth.

The seventh exception embraces the rulings of the Court, upon the prayers. At the trial of the case, the defendant offered ten prayers, and all of them were rejected. The prayers were based solely on the sealed contracts and were property rejected.

The suit was in assumpsit and not on the sealed contracts. The plaintiff could only recover the reasonable value of the work. The ruling of this Court in *Orem* v. *Keelty, supra,* is directly in point, where it is said: "The defendant's prayers are drawn on the theory that the sealed instruments is the cause of action, but they are not applicable to the implied contract which became substituted in its place."

Finding no error in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed, with costs.*